DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Sunny Kurjian, Jr., appeals from the conviction entered in the Medina County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On September 29, 2004, the Medina County Grand Jury indicted Appellant on one count of driving under the influence of drugs or alcohol with prior offenses, in violation of R.C. 4511.19(A)(1), a third-degree felony, and in violation of R.C. 4511.99.
 {¶ 3} This charge arose from a traffic stop on August 9, 2004. Upon leaving the Medina Post of the State Highway Patrol, Trooper Foxx received a call from dispatch regarding a white car traveling at a high rate of speed just north of the Post. As Trooper Foxx reached the intersection of Frantz and Hamilton Roads, he observed a speeding white car matching the description given by dispatch. Trooper Foxx visually estimated Appellant's speed to be 75 m.p.h. to 80 m.p.h. The speed limit in that area was 50 m.p.h. Just before passing Trooper Foxx, Appellant applied his brakes with enough force to cause the front of the car to lunge forward into the road and to swerve left of center. Trooper Foxx pulled out behind Appellant and turned on his lights to initiate the traffic stop. Appellant turned left into a private driveway, but did not pull in far enough for Trooper Foxx to also park his car. Trooper Foxx had to instruct Appellant to pull further into the driveway.
 {¶ 4} Trooper Foxx approached Appellant inside the parked car and asked for his driver's license. Appellant was unable to produce his driver's license. Trooper Foxx smelled the odor of alcohol coming from Appellant and observed that Appellant's eyes were bloodshot and glassy. Additionally, Trooper Foxx noted that Appellant's speech was slurred and he was rambling about how he was an informant for the FBI and Sheriff's Office.
 {¶ 5} Initially, Appellant was compliant. However, his demeanor turned belligerent and uncooperative when Trooper Foxx asked him to step out of the car. Based upon Appellant's change in demeanor, Trooper Foxx pulled his retractable baton out and had it by the side of his body. Appellant responded by verbally threatening to accost Trooper Foxx. Appellant refused to take his hands out of his pockets per Trooper Foxx's request. Then Appellant began waiving his hands and arms above his head. Appellant only calmed down after Trooper Foxx retrieved his taser gun. At this point Trooper Foxx arrested Appellant for driving under the influence.
 {¶ 6} At his arraignment, Appellant pled not guilty by reason of insanity and filed a motion for a competency evaluation and a motion to suppress. A competency evaluation was performed in which Appellant was found incompetent and ordered to undergo treatment. The motion to suppress was held in abeyance until such time that Appellant's competency was restored. Three months later, Appellant was deemed competent. The trial court proceeded with a hearing on Appellant's motion to suppress. The trial court found that there was reasonable suspicion for the stop and that probable cause existed to arrest Appellant without a warrant. Thus, Appellant's motion to suppress was denied.
 {¶ 7} The matter proceeded to a jury trial on November 14, 2005. The jury returned a guilty verdict for driving under the influence of drugs or alcohol with prior offenses. The trial court sentenced Appellant to two years in prison and suspended his driver's license for ten years.
 {¶ 8} Appellant timely appealed his conviction, asserting three assignments of error for review. For ease of review, we will address the assignments of error out of order and combine the first and second assignments of error.
 II. A. Third Assignment of Error "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS IN THAT THE STATE OF OHIO LACKED REASONABLE SUSPICION FOR AN INVESTIGATORY STOP. [SIC] LACKED REASONABLE SUSPICION TO PROCEED WITH THE INVESTIGATORY STOP, AND LACKED PROBABLY [SIC] CAUSE TO ARREST APPELLANT FOR OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF ALCOHOL AND/OR DRUGS IN VIOLATION OF REVISED CODE 4511.19(A)(1)(a). THEREFORE, ANY EVIDENCE AND INFORMATION SEIZED FROM HIM WAS IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS, AND SHOULD HAVE BEEN SUPPRESSED."
 {¶ 9} Appellant's third assignment of error alleges that based on Trooper Foxx's testimony there were no reasonable grounds to stop Appellant. Further, Appellant alleges that Trooper Foxx did not have probable cause to arrest Appellant for driving under the influence. Appellant argues that his behavior during the traffic stop was attributable to his mental health issues and not being under the influence of alcohol or drugs. We disagree.
 {¶ 10} A motion to suppress evidence under the Fourth Amendment involves mixed questions of law and fact. Ornelas v. United States
(1996), 517 U.S. 690, 696; State v. Booth, 151 Ohio App.3d 635,2003-Ohio-829, at ¶ 12. Therefore, this Court grants deference to the trial court's findings of fact, but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts.Ornelas, 517 U.S. at 699. Thus, we review "findings of historical fact only for clear error and * * * give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."State v. Jones, 9th Dist. No. 20810, 2002-Ohio-1109, at *1, quotingOrnelas, 517 U.S. at 699. Because the trial court "is in the best position to resolve questions of fact and evaluate credibility of witnesses[, an] appellate court, therefore, is bound to accept a trial court's factual findings that are supported by competent, credible evidence." (Internal citations and quotations omitted.) Akron v.Bowen, 9th Dist. No. 21242, 2003-Ohio-830, at ¶ 5. After allowing for the officers' reasonable inferences and acknowledging the trial court's superior position in weighing the facts, we "decide whether, under a standard of objective reasonableness, those facts would give rise to a reasonable suspicion justifying a stop or probable cause to search." (Internal citations and quotations omitted.) State v. Reed (Aug. 21, 1996), 9th Dist. No. 17635, at *2. When addressing the question of reasonable suspicion to make a traffic stop and probable cause to arrest, this court must review the trial court's determinations de novo.Ornelas, 517 U.S. at 699.
1. Reasonable Suspicion
 {¶ 11} Before a law enforcement officer may stop a vehicle, the "officer must have reasonable suspicion, based upon specific and articulable facts, that an occupant is or has been engaged in criminal activity. State v. Trbovich (July 3, 1996), 9th Dist. No. 17613, at *2. Reasonable suspicion constitutes something less than probable cause.State v. Carlson (1995), 102 Ohio App.3d 585, 590. "[I]f the specific and articulable facts available to an officer indicate that a motorist may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop." Id. at 593. "No further inquiry beyond the requirement of reasonable suspicion is necessary or warranted." Id.
 {¶ 12} The trial court must look at the totality of the circumstances in determining if a stop is reasonable. State v. Anderson (1995),100 Ohio App.3d 688, 692. "[T]he circumstances surrounding the stop must `be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" State v. Bobo
(1988), 37 Ohio St.3d 177, 179, quoting United States v. Hall
(C.A.D.C.1976), 525 F.2d 857, 859. The court must weigh the facts of the case against an objective standard: "[W]ould the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry v. Ohio (1968), 392 U.S. 1, 21-22. The officer's subjective motives in stopping a vehicle are irrelevant whenever a reasonable officer could stop the same vehicle for a traffic violation.Whren v. United States (1996), 517 U.S. 806, 809, 813.
 {¶ 13} We begin by clarifying what portion of the record is applicable in determining the issues of reasonable suspicion and probable cause. Both Appellant and Appellee improperly rely on portions of the trial transcript to support their positions with regard to the ruling on the motion to suppress. The record in this case contains a transcript of the suppression hearing, which was the only evidence available to the trial court at the time it ruled on the motion to suppress. Accordingly, our review of the third assignment of error, which addresses the trial court's denial of Appellant's motion to suppress, is limited to the testimony produced at the suppression hearing. See State v. Wright, 7th Dist. No. 03 MA 112, 2004-Ohio-6802, at ¶ 30. We will not consider the testimony procured during the trial in rendering our decision on this assignment of error. Id.
 {¶ 14} The only testimony presented at the suppression hearing was from Trooper Foxx, the officer initiating the traffic stop and arresting Appellant. Trooper Foxx testified that he received a call from dispatch regarding a car traveling at a high rate of speed. Trooper Foxx encountered Appellant at the intersection of Frantz and Hamlin Roads. While stopped at the intersection, Trooper Foxx observed Appellant's white car approach the intersection at approximately 75 m.p.h. to 80 m.p.h. The speed limit in that area was 50 m.p.h. Trooper Foxx admitted Appellant's speed was only an estimation based upon his training and experience.
 {¶ 15} As Appellant's vehicle approached the intersection, he heavily applied the brakes causing the nose of the car to dive forward toward the road. Additionally, Appellant's car swerved left of center due to the hard braking.
 {¶ 16} Based on the above testimony Trooper Foxx had observed at least two traffic violations (speeding and left of center), thus giving Trooper Foxx reasonable suspicion to initiate a traffic stop. SeeCarlson, 102 Ohio App.3d at 593. Accordingly, we find there were reasonable grounds for Trooper Foxx to initiate a traffic stop of Appellant.
2. Probable Cause
 {¶ 17} This Court has held that "[p]robable cause [to] arrest for driving under the influence exists if, at the moment of the arrest, the totality of the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had violated R.C. 4511.19." (Internal quotations omitted.) In re V.S., 9th Dist. No. 22632, 2005-Ohio-6324, at ¶ 13, quoting State v. Gunther, 4th Dist. No. 04CA25, 2005-Ohio-3492, at ¶ 20. In order to have valid probable cause to arrest a driver for driving under the influence, there must be observations by the officer of indicia of alcohol consumption. State v.Rouse, 7th Dist. No. 04 BE 53, 2005-Ohio-6328, at ¶ 34. However, there is no prerequisite that an officer observe erratic driving in order to effectuate an arrest for driving under the influence. Id. at ¶ 35.
 {¶ 18} Further, "[t]he totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered * * *." State v. Homan (2000),89 Ohio St.3d 421, 427. "Field sobriety tests are not even a necessary factor in order to arrest or convict for OMVI." (Internal quotations omitted.)State v. Stephenson, 4th Dist. No. 05CA30, 2006-Ohio-2563, at ¶ 19, quoting Rouse at ¶ 15. Accordingly, "the standard for probable cause does not require a prima facie showing of criminal activity; rather, the standard requires only a showing that a probability of criminal activity exists." (Internal quotations omitted.) State v. Tejada, 9th Dist. No. 20947, 2002-Ohio-5777, at ¶ 8, quoting State v. Young (2001),146 Ohio App.3d 245, 254.
 {¶ 19} Trooper Foxx testified that upon approaching Appellant, he observed Appellant's eyes as being bloodshot and glassy and there was an odor of alcohol emitting from inside the car. Additionally, Trooper Foxx noted that Appellant's speech was slurred and he was rambling about being an informant for the FBI and Sheriff's Office. Appellant was unable to produce his driver's license upon Trooper's Foxx's request.
 {¶ 20} Initially, Appellant's demeanor was "laid back." However, Appellant became "belligerent" and "uncooperative" when Trooper Foxx asked him to step out of the car. In defiance of Trooper Foxx's commands, Appellant refused to remove his hands from his pockets and then began raising his arms above his head. Additionally, Appellant verbally threatened Trooper Foxx by stating, "I'm going to kick your a**."
 {¶ 21} Appellant argues that the above observations by Trooper Foxx are attributable to Appellant's mental health issues and not evidence of alcohol impairment. While this may be a plausible explanation of Appellant's statements regarding working for the FBI and the Sheriff's Office or his belligerent behavior, this does not explain the odor of alcohol and bloodshot and glassy eyes. Further, Trooper Foxx did not have any knowledge of Appellant's mental health issues at the time of arrest. Based upon Trooper Foxx's knowledge of Appellant at the time of the arrest, Appellant's belligerent behavior and rambling statements, in addition to his slurred speech, bloodshot and glassy eyes and odor of alcohol were all factors reasonably attributable to alcohol impairment.
 {¶ 22} Lastly, Appellant asserts that Trooper Foxx did not have probable cause and instead arrested Appellant based upon an inarticulable hunch. Specifically, Appellant's argument relies upon the blatant mischaracterization of Trooper Foxx's testimony by taking the phrase "spidy sense" out of context. During re-cross examination, Appellant's counsel inquired why Trooper Foxx did not perform field sobriety tests.
 "Q: Did you ask him to do any field sobriety tests?
 "A: Well, like I explained to the Court, I sensed that there was going to be a confrontation.
 "Q: So you just sensed this. There was an inner sense?
"* * *
 "A: I'm not going to call it a `spidy sense,' or nothing like that, but I can sense, you know, from body language that something's getting ready to happen." (Emphasis added.)
This exchange was further clarified during re-direct examination:
 "Q: Okay. Now, that body language and that sense you got, is that based on your training and experience?
 "A: More, I would say, experience."
Taken in context, the suppression hearing transcript shows that Trooper Foxx was not acting upon an inarticulable hunch or "spidy sense." Instead, Trooper Foxx was observing Appellant's behavior, body language, and statements in conjunction with the odor of alcohol and bloodshot and glassy eyes. These observations were sufficient to form probable cause for a driving under the influence arrest.
 {¶ 23} Based upon the suppression hearing record, Trooper Foxx observed numerous indicia of alcohol consumption: bloodshot and glassy eyes, the odor of alcohol, slurred and rambling speech, and belligerent behavior. See Rouse at ¶ 34.This Court finds that the totality of the facts and circumstances available to Trooper Foxx "were sufficient to warrant a prudent person in believing that the suspect had violated R.C. 4511.19." In re V.S. at ¶ 13. Therefore, probable cause existed to arrest Appellant for driving under the influence.
 {¶ 24} Appellant's third assignment of error is overruled.
 B. First Assignment of Error "THE STATE OF OHIO FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE THAT APPELLANT'S ABILITY TO DRIVE WAS IMPAIRED BY ALCOHOL."
 Second Assignment of Error "APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 25} Appellant's first and second assignments of error allege that his conviction of driving under the influence of drugs or alcohol with prior offenses was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.
 {¶ 26} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. As a matter of appellate review, they involve different means and ends. See id. at 386-89. They also invoke different inquiries with different standards of review. Id.; State v. Smith (1997),80 Ohio St.3d 89, 113. The difference, in the simplest sense, is that sufficiency tests the burden of production while manifest weight tests the burden of persuasion. Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring).
 {¶ 27} Sufficiency is a question of law. Thompkins,78 Ohio St.3d at 386; Smith, 80 Ohio St.3d at 113. If the State's evidence was insufficient as a matter of law, then on appeal, a majority of the panel may reverse the trial court. Thompkins, 78 Ohio St.3d at paragraph three of the syllabus, citing Sec. 3(B)(3), Art. IV, Ohio Constitution. Because reversal for insufficiency is effectively an acquittal, retrial is prohibited by double jeopardy. Thompkins, 78 Ohio St.3d at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 47. Under this construct, the State has failed its burden of production, and as a matter of due process, the issue should not even have been presented to the jury.Thompkins, 78 Ohio St.3d at 386; Smith, 80 Ohio St.3d at 113.
 {¶ 28} In a sufficiency analysis, an appellate court presumes that the State's evidence is true (i.e., both believable and believed), but questions whether the evidence produced satisfies each of the elements of the crime. Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307, 319. This standard requires no exhaustive review of the record, no comparative weighing of competing evidence, and no speculation as to the credibility of any witnesses. Instead, the appellate court "view[s] the evidence in a light most favorable to the prosecution." Id. "[T]he weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 29} Manifest weight is a question of fact. Thompkins,78 Ohio St.3d at 387. If the trial court's judgment was against the manifest weight of the evidence, then an appellate panel may reverse the trial court. Id. In the special case of a jury verdict, however, the panel must be unanimous in order to reverse. Id. at paragraph four of the syllabus, citing Sec. 3(B)(3), Art. IV, Ohio Constitution. Because reversal on manifest weight grounds is not a question of law, it is not an acquittal but instead is akin to a deadlocked jury from which retrial is allowed. Id. at 388, citing Tibbs, 457 U.S. at 42. Under this construct, the appellate panel "sits as [the] `thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony," finding that the State has failed its burden of persuasion. Id.
 {¶ 30} When a defendant asserts his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
"A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring). This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Otten, 33 Ohio App.3d at 340.
 {¶ 31} In application, this may be stated as a "[c]ourt will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other." State v. Lee,158 Ohio App.3d 129, 2004-Ohio-3946, at ¶ 15, quoting State v. Hall (Sept. 20, 2000), 9th Dist. No. 19940, at *5. Nor is a conviction "against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Urbin, 148 Ohio App.3d 293,2002-Ohio-3410, at ¶ 26, quoting State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at *7. Moreover, a conviction may withstand evidence that is susceptible to some plausible theory of innocence. State v.Figueroa, 9th Dist. No. 22208, 2005-Ohio-1132, at ¶ 7, citingJenks, 61 Ohio St.3d at 272.
 {¶ 32} Finally, although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. "Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Lee at ¶ 18, citing Cuyahoga Falls v. Scupholm (Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735, at *3. Accord Urbin at ¶ 31. In the present case, manifest weight is dispositive of Appellant's first and second assignments of error.
 {¶ 33} Appellant was convicted of driving while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a), which states as follows:
 "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."
The disputed element here is under the influence of alcohol; the element of operation of a vehicle is not at issue.
 {¶ 34} This Court has previously addressed the type of evidence required to support a conviction pursuant to R.C. 4511.19(A)(1).
 "[I]n DUI prosecutions, the state is not required to establish that a defendant was actually impaired while driving, but rather, need only show an impaired driving ability. `To prove impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired.' Furthermore, `[v]irtually any lay witness, without special qualifications, may testify as to whether or not an individual is intoxicated.'" (Internal citations omitted.) State v. Slone, 9th Dist. No. 04CA0103-M, 2005-Ohio-3325, at ¶ 9.
 {¶ 35} Based on a review of the record, this Court finds it reasonable that the jury could have believed the testimony and evidence proffered by the State. The jury heard testimony from two witnesses. The State produced the arresting officer, Trooper Foxx, while the defense produced Appellant's treating psychologist, Dr. Van Auken.
 {¶ 36} Trooper Foxx testified that he observed Appellant driving a white car at a high rate of speed on Hamilton Road. Trooper Foxx estimated Appellant's speed at 75 m.p.h., well in excess of the 50 m.p.h. limit. Trooper Foxx described the line of sight at the intersection to be a quarter of a mile. However, Appellant did not apply his brakes until he was approximately 25 to 40 feet from Trooper Foxx.
 {¶ 37} Appellant's reaction to Trooper Foxx at the intersection was to slam on his brakes hard enough to lock them up causing the front end of the car to nose dive into the pavement and to swerve left of center. Trooper Foxx testified that it is normal for drivers to brake and slow down upon seeing a patrol car. However, drivers do not typically slam on the brakes and cross over the center line. On cross-examination, Appellant's counsel challenged the loss of control of the vehicle:
 "Q: And you would agree that going seventy-five miles an hour, slamming on the brakes, veering over and keeping control of the vehicle takes pretty quick reflexes, correct? "A: He did a good job of that, but — "Q: Thank you." (Emphasis added.)
While Trooper Foxx conceded that Appellant "did a good job," Appellant's counsel interrupted Trooper Foxx's answer.
 {¶ 38} Upon witnessing the left of center violation, Trooper Foxx turned on his lights and sirens for Appellant to stop. While Trooper Foxx conceded that Appellant responded within a few seconds of turning on the sirens, he also categorized Appellant's response as being "a little abrupt." Trooper Foxx stated that Appellant's action of turning left into a private driveway and not pulling in far enough to allow room for the patrol car was uncommon. He went on to explain that it would have been safer for both Appellant and Trooper Foxx, if Appellant had simply pulled off onto the berm on the right side of the road facing oncoming traffic with the patrol car positioned behind Appellant's car.
 {¶ 39} Other examples of impairment included Appellant's belligerent and uncooperative behavior, coupled with his threats of violence against Trooper Foxx. Additionally, the videotape from Trooper Foxx's patrol car was played for the jury. Accordingly, the jury was able to view for themselves the interaction between Trooper Foxx and Appellant and Appellant's level of impairment.
 {¶ 40} In conjunction with the above described impairment, Trooper Foxx testified that he observed Appellant stagger on two occasions, an odor of alcoholic beverage emitting from Appellant's person, and Appellant's slurred speech and bloodshot and glassy eyes. Appellant's counsel aggressively cross-examined Trooper Foxx regarding other plausible explanations for these physiological factors.
 {¶ 41} Appellant called Dr. Van Auken to the stand. Dr. Van Auken testified that he was Appellant's treating psychologist and he had diagnosed Appellant with delusional disorder and alcohol disorder. Dr. Van Auken explained that Appellant's delusional disorder caused him to have paranoid beliefs that law enforcement officers were conspiring against him. These paranoid beliefs cause Appellant to experience high levels of anxiety whenever he encounters law enforcement. However, Dr. Van Auken was unable to state how Appellant would specifically react to the high level of anxiety. "In this case, the people with this condition experience an overwhelming anxiety. Would that make them uncooperative with the police, I don't know, it might have that effect." (Emphasis added.) Accordingly, Dr. Van Auken was unable to definitively say whether Appellant's belligerent and uncooperative demeanor was a result of his delusional disorder.
 {¶ 42} Dr. Van Auken also explained that extreme anxiety could produce physical symptoms such as "hyper-ventilation, redness of the face, clammy skin, [and] pounding heart" similar to the feeling of having a heart attack. While Appellant provided testimony regarding the physical effects of his delusional disorder, it is important to note that none of the anxiety symptoms listed above are the same or even related to the indicators Trooper Foxx observed (odor of alcohol, bloodshot and glassy eyes, slurred speech, and staggering).
 {¶ 43} Upon review of the evidence, this Court cannot say that the jury lost its way in finding Appellant guilty of driving under the influence of alcohol. The evidence is undisputed that Appellant was driving his car on the day in question. The evidence is further undisputed that Appellant, by his own admission on the video-tape, had one or two beers on the day in question. Assuming arguendo that Dr. Van Auken's testimony explained why Appellant was belligerent and uncooperative, Appellant's claim still must fail. Additionally, Appellant's "spidy sense" accusations in these assignments of error are similarly unfounded as the phrase has been taken out of context and distorted.
 {¶ 44} Further, we conclude that Appellant's criticisms of the State's evidence in this case are inadequate to prove that the jury lost its way and created a manifest miscarriage of justice. Thompkins,78 Ohio St.3d at 387. Rather, we find it reasonable that the jury believed the State's version of the events, disbelieved Appellant's witness and convicted him accordingly. We conclude that the conviction is not against the manifest weight of the evidence.
 {¶ 45} Having found that Appellant's conviction was not against the manifest weight of the evidence, we also conclude that there was sufficient evidence to support the jury's verdict in this case with respect to the offense. See
Roberts, supra.
 {¶ 46} Appellant's first and second assignments of error are overruled.
 III. {¶ 47} Appellant's assignments of error are overruled. The judgment of Medina County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
SLABY, P. J.CARR, J. concur.