DECISION AND JOURNAL ENTRY
{¶ 1} On September 5, 2007, the Appellant, Timothy A. McGinty ("McGinty"), was arrested and charged with operating a vehicle under the influence of alcohol and failure to use a turn signal. He entered a plea of "not guilty" and filed a Motion to Suppress Evidence ("Motion") with respect to his detention and arrest. After a hearing, the Medina Municipal Court overruled the Motion. McGinty then changed his plea to "no contest." The trial court dismissed the turn signal charge, found McGinty guilty of the OVI charge, and entered a sentence.
 {¶ 2} McGinty filed the instant appeal with respect to the trial court's judgment entry overruling his Motion. McGinty argues that the trial court erred in: (1) finding reasonable suspicion for the initial traffic stop; (2) assigning more credibility to the testimony of the state's witnesses than to the testimony of the defense witnesses; and (3) finding probable cause for the arrest. This Court affirms. *Page 2 
 FACTS {¶ 3} On September 5, 2007, at approximately 10:00 p.m., Ohio State Trooper Harley Steppenbacker ("Trooper Steppenbacker") was on duty in the area of Route 3 and Interstate 71 in Medina Township. Trooper Steppenbacker was heading south on Route 3 with the intent to proceed onto Interstate 71 south.
 {¶ 4} When the light at the intersection changed from red to green, he observed that McGinty quickly accelerated his vehicle, causing the vehicle to lose traction and "fishtail" with the tires spinning. Since McGinty was travelling north on Route 3, Trooper Steppenbacker made a U-turn to follow McGinty.
 {¶ 5} At the next traffic light for the on ramp to Interstate 71 north, McGinty turned left onto the on ramp, but did not activate his left turn signal. At this point, Trooper Steppenbacker initiated a traffic stop.
 {¶ 6} Trooper Steppenbacker approached McGinty's car and spoke with him. He perceived an odor of alcohol and noticed that McGinty's eyes were glassy and bloodshot. McGinty also stated that he was coming from a golf outing and that he had been drinking alcoholic beverages while golfing and after golfing. Trooper Steppenbacker was en route to another location, so he radioed for another patrolman to be dispatched to his location to conduct an investigation to determine if McGinty was driving while impaired.
 {¶ 7} Trooper Justin Daley ("Trooper Daley") arrived on scene and spoke with Trooper Steppenbacker. Trooper Daley also detected the odor of alcohol when speaking with McGinty and observed that McGinty's eyes were glassy and bloodshot. Trooper Daley asked McGinty how much alcohol he had consumed. McGinty replied that he had been drinking during and *Page 3 
after golfing. Trooper Daley then administered the field sobriety tests. Trooper Daley concluded that McGinty was driving under the influence and placed him under arrest.
 {¶ 8} McGinty has raised three assignments of error with respect to the trial court's denial of his Motion. In his first assignment of error, McGinty argues that Trooper Steppenbacker lacked reasonable suspicion that McGinty committed a traffic offense. The second assignment of error challenges the trial court's evaluation of the witness testimony presented by both parties. McGinty alleges that the trial court erred in finding the testimony of the troopers to be more credible than that of the defense witnesses. In his third assignment of error, McGinty contends that Trooper Daley did not have probable cause to arrest him for operating a motor vehicle while under the influence of alcohol. The Court shall address the assignments of error out of order, considering the first and third assignments of error in tandem, followed by the second assignment of error.
 STANDARD OF REVIEW {¶ 9} An appeal from a ruling on a motion to suppress presents a mixed question of law and fact. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8. This Court must defer to the trial court's findings of fact as the trial court is in the best position to evaluate the evidence and determine the credibility of the witnesses. State v.Kurjian, 9th Dist. No. 06CA0010-M, 2006-Ohio-6669, at ¶ 10, citingOrnelas v. United States (1996), 517 U.S. 690, 699, and quotingAkron v. Bowen, 9th Dist. No. 21242, 2003-Ohio-830, at ¶ 5. A reviewing court accepts the trial court's findings of fact if they are supported by competent, credible evidence. State v. Metcalf, 9th Dist. No. 23600,2007-Ohio-4001, at ¶ 6, citing State v. Searls (1997),118 Ohio App.3d 739, 741. However, this Court will review the trial court's application of the law to the facts de novo. Metcalf at ¶ 6, citing Searls118 Ohio App.3d at 741. *Page 4 
 REASONABLE SUSPICION and PROBABLE CAUSE {¶ 10} The Fourth and Fourteenth Amendments to the United States Constitution prohibit warrantless searches and seizures. One such seizure is a traffic stop. State v. Swann, 9th Dist. No. 23529,2007-Ohio-3235, at ¶ 6, citing Whren v. United States (1996),517 U.S. 806, 809-10. However, a law enforcement officer may engage in an investigatory stop of a vehicle if the officer's stop is based upon a reasonable suspicion that the vehicle's occupant is violating the law.Swann at ¶ 6, citing Maumee v. Weisner (1999), 87 Ohio St.3d 295, 299. Reasonable suspicion requires an officer to point to specific, articulable facts, which viewed in light of the totality of the circumstances, indicate that the stop was reasonable. Terry v. Ohio
(1968), 392 U.S. 1, 21-22. The stop is justified if, based on those specific, articulable facts, the officer concludes that the person stopped may be committing a violation of the law, including a traffic violation. Swann at ¶ 6, quoting State v. Shook (June 15, 1994), 9th Dist. No. 93CA005716. Both the United States Supreme Court and the Supreme Court of Ohio have determined "that any violation of a traffic law gives rise to a reasonable suspicion to make an investigatory stop of a vehicle." State v. Blair, 9th Dist. No. 24208, 2008-Ohio-6257
at ¶ 6. (Internal citations omitted.) Pursuant to R.C. 4511.39, it is a violation of the traffic statutes for a driver on a highway to turn either right or left without first indicating the turn with a signal.
 {¶ 11} In order to effectuate an arrest, the arresting officer must have probable cause to believe that the person to be arrested is engaging in criminal activity. Kurjian at ¶ 18, quoting State v.Tejada, 9th Dist. No. 20947, 2002-Ohio-5777, at ¶ 8. (Internal citation omitted.) The amount of evidence necessary for probable cause to suspect a crime is being committed is less evidence than would be necessary to support a conviction of that crime at trial. Tejada at ¶ 8, quotingState v. Young, 146 Ohio App.3d 245, 2001-Ohio-4284, at ¶ 23. It is necessary to show *Page 5 
merely that a probability of criminal activity exists, not proof beyond a reasonable doubt, or even proof by a preponderance of evidence that a crime is occurring. Id.
 {¶ 12} Pursuant to R.C. 4511.19(A)(1)(a), "[n]o person shall operate any vehicle * * * within this state, if, at the time of operation, * * * the person is under the influence of alcohol * * *." An officer possesses probable cause to arrest a person for a violation of R.C. 4511.19(A)(1) when the totality of the circumstances at the time of arrest would lead a reasonable person to believe that the person to be arrested is operating a vehicle while impaired. Kurjian at ¶ 17, citingIn re V.S., 9thDist. No. 22632, 2005-Ohio-6324, at ¶ 13. The totality of the circumstances includes the officer's observations relating to alcohol consumption as well as the driver's performance on field sobriety tests. State v. Homan, 89 Ohio St.3d 421, 427, 2000-Ohio-212, superseded by R.C. 4511.19(D)(4)(b) on other grounds. The officer's observations may include the indicia of alcohol consumption, such as slurred speech, glassy or bloodshot eyes, poor coordination, odor of alcohol, admission of alcohol consumption, et cetera. See State v.Evans (1998), 127 Ohio App.3d 56, 63 fn. 2.
 {¶ 13} In the instant matter, Trooper Steppenbacker testified that he first noticed McGinty's car when McGinty quickly accelerated from a stop at a traffic light, causing his tires to lose traction and his vehicle to "fishtail." Trooper Steppenbacker then made a U-turn in order to follow McGinty. After pulling around behind McGinty's car, he observed McGinty turn left to proceed onto Interstate 71 north without giving the appropriate turn signal. Based on these observations, Trooper Steppenbacker activated his overhead lights to stop McGinty.
 {¶ 14} McGinty contends that the trial court incorrectly found that Trooper Steppenbacker had a reasonable suspicion to support the initial traffic stop because McGinty presented evidence that a traffic violation did not occur. McGinty and his friend, Glen Balog, *Page 6 
were golfing at the same golf course. In the evening, after both McGinty and Balog had finished golfing, Balog stated that he was planning to meet some friends at a club after leaving the golf course. However, he was not sure how to get to the club. McGinty agreed to lead Balog to the club on his way home. McGinty and Balog then left the golf course in separate cars on their way to the club. Both McGinty and Balog maintain that Balog remained close behind McGinty as they proceeded to Interstate 71 north. Both also contend that McGinty did not drive erratically and that he signaled his left-hand turn onto the highway.
 {¶ 15} In support of his argument, McGinty cites State v.Garrett, 4th Dist. No. 05CA802, 2005-Ohio-5155. In that case, the appellate court affirmed the trial court's ruling on the defendant's motion to suppress finding the stop improper because the officer did not possess a reasonable articulable suspicion that a traffic violation occurred. Garrett at ¶¶ 13-14. Garrett stopped his vehicle and skidded in the gravel on the road; other than that, the arresting officer did not observe any traffic violations or erratic driving. Garret at ¶¶ 3-4.
 {¶ 16} Garrett is inapplicable to the case at hand. Here, credible testimony was presented that Trooper Steppenbacker observed erratic driving and a traffic violation, namely, failing to signal a turn. However, in Garret, the officer did not testify that he observed a traffic violation; instead, he merely observed the defendant skid in the gravel when coming to a stop.
 {¶ 17} Although McGinty and Balog testified that McGinty did not "fishtail" and that he used his traffic signal, Trooper Steppenbacker testified otherwise. A law enforcement officer may make an investigatory stop of vehicle based upon a reasonable suspicion that the driver has committed a traffic violation. Swann at ¶ 6. In this matter, Trooper Steppenbacker was able to point to specific, articulable facts, namely, the "fishtail" of the vehicle and the turn signal violation, to justify the stop. See Terry 392 U.S. at 21-22. Although McGinty provided contrary *Page 7 
testimony; the trial court's finding of reasonable suspicion was based on the competing testimony of Trooper Steppenbacker. The trial court, as the finder of fact, necessarily weighed the credibility of the witnesses and determined that it found the testimony of Trooper Steppenbacker to be more credible than that of McGinty and Balog. This Court concludes that the trial court did not err in that determination. Thus, because the factual findings of the trial court were supported by competent, credible evidence, we cannot say that that the trial court erred in determining that those facts gave rise to a reasonable, articulable suspicion of criminal activity which formed the basis of the traffic stop.
 {¶ 18} McGinty further argues that Trooper Daley lacked probable cause to arrest him for operating a motor vehicle while impaired. He does not challenge the results of the field sobriety tests, but claims these results were inconclusive and could not support probable cause to effectuate the arrest given that he was otherwise able to comply with Trooper Daley's instructions, maintained balance and stability, and had no difficulty communicating with Trooper Daley.
 {¶ 19} Trooper Daley stated that when he arrived on scene, Trooper Steppenbacker informed him of the following: that McGinty committed at least one traffic violation; that when he spoke with McGinty he noticed the odor of alcohol; and, that McGinty admitted to having consumed alcoholic beverages earlier that day. Trooper Daley then spoke with McGinty and noticed an odor of alcohol as well as glassy, bloodshot eyes and slightly slurred speech. McGinty told Trooper Daley he had a beer while golfing, a couple of drinks after golfing, and a *Page 8 
shot after golfing.[1] Trooper Daley administered the field sobriety tests. He detected four of the six clues for the horizontal gaze nystagmus test, two of the six clues for the one-legged stand test, and five of the six clues for the walk and turn test. In light of Trooper Daley's observations and McGinty's performance on the field sobriety tests, Trooper Daley read McGinty the Miranda warnings and placed him under arrest.
 {¶ 20} McGinty argues that because the field sobriety tests were not conclusive determinations of impairment, there were insufficient facts to support probable cause for the arrest. Assuming, arguendo, that the results of the field sobriety tests preformed on McGinty were inconclusive, those results, in whole or in part, need not form the basis of a probable cause determination. Homan, 89 Ohio St.3d at 427. The officer's observations and the totality of the circumstances may support a finding of probable cause, even in the absence of field sobriety tests. Id. At the time of McGinty's arrest, the totality of the circumstances, including the information relayed to Trooper Daley by Trooper Steppenbacker, Trooper Daley's own observations of McGinty; which included the odor of alcohol, slightly slurred speech, glassy, and bloodshot eyes, and McGinty's admission of alcohol consumption, regardless of his performance on the field sobriety tests, provided Trooper Daley with probable cause to believe that McGinty was operating his vehicle under the influence of alcohol. See Homan,89 Ohio St.3d at 427. Accordingly, the trial court did not err in finding that McGinty's arrest was based on probable cause. *Page 9 
 CREDIBILITY {¶ 21} In his second assignment of error, McGinty claims the trial court committed reversible error in finding the troopers' testimony to be more credible than his and that of Balog.
 {¶ 22} "The trier of fact is typically free to believe all, part, or none of the testimony of each witness who appears before it." State v.Long (1998), 127 Ohio App.3d 328, 335. (Internal citations omitted.) The trial court is able to view the demeanor of the witnesses as they testify, note the manner in which each testifies, tone, inflection, hesitation, et cetera, in order to evaluate credibility. Seasons CoalCo. Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Accordingly, we must defer to the credibility assessments of the trial court. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. This Court finds no error in the trial court's determination of credibility.
 CONCLUSION {¶ 23} Timothy A. McGinty's assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the *Page 10 
period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
WHITMORE, J. MOORE, P. J. CONCUR
[1] At the suppression hearing, McGinty admitted to having one beer around 3:30 p.m. before he teed off, two more beers and an airline-sized bottle of Crown Royal (to which McGinty refers as a "shot") while golfing, and a 20-ounce beer with dinner between 8 and 9:30 p.m. Trooper Steppenbacker initially stopped McGinty around 10:00 p.m. *Page 1