[Cite as *State v. Romes*, 2016-Ohio-5772.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    14CA0095-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRIAN M. ROMES | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.    14 TRC 00284 |

DECISION AND JOURNAL ENTRY

Dated: September 12, 2016

MOORE, Judge.

{¶1}   Defendant-Appellant, Brian Romes, appeals from his convictions in the Medina Municipal Court.  This Court affirms.

I.

{¶2}   During the early morning hours of January 5, 2014, Mr. Romes struck the rear fender of Rebecca Brummer's car.  At the time, Ms. Brummer was a passenger in the car and her fiancé, Jesse Gast, was the driver.  There is no dispute that Mr. Romes, Ms. Brummer, and Mr. Gast were acquainted and that, directly before the collision occurred, they had all been at a bar near Litchfield Circle.  According to Mr. Romes, he accidentally struck Ms. Brummer's car in the bar's parking lot due to icy pavement conditions.  According to Ms. Brummer, Mr. Romes struck her car as she and Mr. Gast were stopped at a stop sign near Litchfield Circle.  It was her testimony that Mr. Romes had been drinking before the crash and was visibly intoxicated after it

occurred. Meanwhile, Mr. Romes claimed that he was not intoxicated when he struck Ms. Brummer's car.

{¶3} As a result of the foregoing incident, Mr. Romes was charged with one count of operating a vehicle under the influence of alcohol ("OVI") and one count of failing to maintain an assured clear distance. The matter proceeded to a bench trial, at the conclusion of which the court found Mr. Romes guilty of both charges. The court sentenced him to jail, probation, and a fine, but stayed his sentence for purposes of filing an appeal.

{¶4} Mr. Romes now appeals from his convictions and raises two assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

[MR. ROMES'] CONVICTION FOR [OVI] IS AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF [HIS] RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.

{¶5} In his first assignment of error, Mr. Romes argues that his OVI conviction is based on insufficient evidence. We disagree.

{¶6} The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶7} "No person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol * * *." R.C. 4511.19(A)(1)(a). "To prove impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired." *State v. Peters*, 9th Dist. Wayne No. 08CA0009, 2008-Ohio-6940, ¶ 5, quoting *State v. Slone*, 9th Dist. Medina No. 04CA0103-M, 2005-Ohio-3325, ¶ 9, quoting *State v. Holland*, 11th Dist. Portage No. 98-P-0066, 1999 WL 1313665, *5 (Dec. 17, 1999). "[T]here is no prerequisite that an officer observe erratic driving in order to effectuate an arrest for driving under the influence." *State v. Kurjian*, 9th Dist. Medina No. 06CA0010-M, 2006-Ohio-6669, ¶ 17. Moreover, "virtually any lay witness, without special qualifications, may testify as to whether or not an individual is intoxicated." *State v. Zentner*, 9th Dist. Wayne No. 02CA0040, 2003-Ohio-2352, ¶ 19, quoting *State v. Delong*, 5th Dist. Fairfield No. 02 CA 35, 2002-Ohio-5289, ¶ 60.

{¶8} Ms. Brummer testified that, on the evening of January 4, 2014, she and Mr. Gast had dinner together and then went to a bar near Litchfield Circle. After they arrived, they saw Mr. Romes, who was there celebrating the birthday of yet another mutual acquaintance of theirs. Ms. Brummer testified that, over the course of the evening, she was able to observe Mr. Romes and saw him drinking. When the bar closed at approximately 2:30 a.m., she and Mr. Gast left in her car with Mr. Gast behind the wheel. As the two turned onto Route 83, they saw Mr. Romes' car pulled off in the gravel behind a restaurant. Mr. Gast then drove over to Mr. Romes' car and stopped beside it so that they could check on him.

{¶9} According to Ms. Brummer, Mr. Romes was "slouched over" his steering wheel. When he realized another car had pulled up next to him, Mr. Romes rolled down his window and

Mr. Gast and Ms. Brummer did the same. Ms. Brummer testified that Mr. Romes slurred his words when he spoke. Because they knew he had been drinking, Ms. Brummer and Mr. Gast tried to persuade Mr. Romes to leave his car there and come with them. He refused, however, so they convinced him to take his car down the road to the home of a mutual acquaintance and stay there. According to Ms. Brummer, Mr. Romes agreed to that arrangement, and they followed behind him as he drove his car there.

{¶10} Ms. Brummer testified that, after she and Mr. Gast escorted Mr. Romes to the arranged destination, they left and continued back down Route 83 toward Litchfield. She testified that Mr. Gast stopped at a stop sign at Litchfield Circle while the two discussed where they were headed. At that point, Ms. Brummer felt "a forceful hit from the rear" and realized that another car had struck them. She then looked back and recognized Mr. Romes' car. Ms. Brummer stated that Mr. Gast motioned to Mr. Romes to drive out of the intersection and Mr. Romes followed. After a brief conversation, they agreed to drive the cars to an area with better lighting. They then drove a short distance to a nearby, residential driveway.

{¶11} According to Ms. Brummer, Mr. Romes stumbled when he exited his car and he and Mr. Gast began yelling at one another. She stated that she heard Mr. Romes apologizing, stating that he was "sorry [he] drank so much." She also stated that Mr. Romes was slurring his words and appeared to be disoriented. She used her cell phone to call her mother and, while she was on the phone with her mother, Mr. Romes reentered his car and drove off. Ms. Brummer then ended the call with her mother and called 911. She confirmed that, based on her observations, she believed Mr. Romes was intoxicated at the time of the collision. She testified that the crash occurred sometime between 2:30 a.m. and 3:00 a.m.

{¶12} At approximately 3:03 a.m., Ohio State Trooper Shawn Mollohan received a dispatch regarding a two-car collision at Litchfield Circle. When he responded to the incident, only one car was present and he learned that the other driver had left the scene. Trooper Mollohan testified that he observed damage to Ms. Brummer's vehicle, including an impression mark left by the front license plate of the car that had struck hers. He spoke with Ms. Brummer and Mr. Gast at the scene and learned that Mr. Romes was the other individual involved in the crash. Ms. Brummer told Trooper Mollohan that Mr. Romes had been drinking while Mr. Gast told him that he assumed Mr. Romes had been drinking. Trooper Mollohan then left the scene and drove to Mr. Romes' residence.

{¶13} Trooper Mollohan testified that he arrived at Mr. Romes' residence at approximately 5:00 a.m. At that time, Mr. Romes was still awake and fully dressed. According to Trooper Mollohan, he detected a very strong odor of alcohol around Mr. Romes and Mr. Romes stumbled when he let Trooper Mollohan into his home. Trooper Mollohan observed that Mr. Romes had "extremely bloodshot and glassy eyes" as well as slurred speech. He further observed that Mr. Romes was carrying a whiskey in one hand and a beer in the other. When Trooper Mollohan initially asked Mr. Romes about the collision that occurred, Mr. Romes stated that "he really wasn't sure what [they] were talking about * * *." Mr. Romes denied that he was involved in any collision, but later admitted that he had "bumped" Ms. Brummer's car. Still, Mr. Romes insisted that he had not damaged the car. He also told Trooper Mollohan that he did not understand why it was necessary to complete a crash report because he had already arranged to handle the matter privately. Trooper Mollohan testified that he ultimately decided to charge Mr. Romes with an OVI because, based on his observations of Mr. Romes and the information he received from Ms. Brummer, he believed that Mr. Romes had driven his car while intoxicated.

{¶14} Joyce Brummer, Ms. Brummer's mother, testified that she knew Mr. Romes before this incident occurred and called him two days after the crash to try to get his insurance information. She testified that, during the call, Mr. Romes apologized numerous times for drinking and driving. According to Joyce, Mr. Romes stated that "[h]e was sorry, he had too much to drink, he should not have been driving, and [] he did not mean to hurt anyone." She also stated that Mr. Romes admitted to leaving the scene of the crash so that he could drive home and set out bottles of alcohol. She testified that, when she told Mr. Romes that his attempt to make it appear that he was only drinking at home was "the oldest trick in the book," he responded "Yeah."

{¶15} Mr. Romes argues that his OVI conviction is based on insufficient evidence because Trooper Mollohan never actually saw him operating a car and the testimony provided by Ms. Brummer and her mother is unreliable. He notes that Trooper Mollohan identified several inconsistences or inaccuracies in Ms. Brummer's statement and/or testimony. He further argues that Joyce Brummer was biased against him because she insured her daughter's car and wanted to see that he was responsible for its repair.

{¶16} To the extent Mr. Romes argues that the State presented unreliable or biased testimony, his argument sounds in weight rather than sufficiency. "A weight challenge tests the persuasiveness of the evidence the State produced while a sufficiency challenge tests the very production of that evidence." *State v. Poland*, 9th Dist. Medina No. 14CA0003-M, 2014-Ohio-5737, ¶ 24. A sufficiency challenge requires this Court to view the evidence in a light most favorable to the State. *Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. Accordingly, in reviewing Mr. Romes' first assignment of error, we may not review the persuasiveness of the

State's evidence. Instead, we must limit our review to the sufficiency of that evidence. *See Poland* at ¶ 24.

**{¶17}** Mr. Romes does not dispute that, on the night in question, he operated his vehicle and struck Ms. Brummer's car. The only issue is whether he was intoxicated when the incident occurred. Viewing all of the evidence in a light most favorable to the prosecution, we must conclude that the State set forth evidence from which a rational trier of fact could have concluded that Mr. Romes was intoxicated at that time. *See Jenks* at paragraph two of the syllabus.

**{¶18}** Both Ms. Brummer and her mother testified that they heard Mr. Romes apologize for drinking too much and causing the crash. Ms. Brummer also stated that she saw Mr. Romes drinking that evening and, immediately before and after the crash, made several observations that led her to believe he was intoxicated. *See Zentner*, 2003-Ohio-2352, at ¶ 19, quoting *Delong*, 2002-Ohio-5289, at ¶ 60. Specifically, she testified that Mr. Romes was "slouched over" his steering wheel before the crash, slurred his words, and stumbled when exiting his car. The State also presented the testimony of Trooper Mollohan. Trooper Mollohan made contact with Mr. Romes within two hours of the crash and testified that Mr. Romes was visibly intoxicated. He stated that Mr. Romes smelled strongly of alcohol, had extremely bloodshot eyes, was slurring his speech, and stumbled at least once. Based on all of the foregoing evidence, a rational trier of fact could have concluded that Mr. Romes was intoxicated at the time that he operated his vehicle. *See Kurjian*, 2006-Ohio-6669, at ¶ 17. Accordingly, he has not shown that his OVI conviction is based on insufficient evidence. His first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

[MR. ROMES'] CONVICTION FOR [OVI] IS AGAINST THE MANIFEST
WEIGHT OF THE EVIDENCE IN VIOLATION OF [HIS] RIGHTS UNDER
THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED
STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO
STATE CONSTITUTION.

{¶19} In his second assignment of error, Mr. Romes argues that his OVI conviction is against the manifest weight of the evidence. We disagree.

{¶20} When a defendant asserts that his conviction is against the manifest weight of the evidence:

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶21} At trial, Mr. Romes testified in his own defense. He testified that, on the night of January 4, 2014, he went to a bar to celebrate a friend's birthday. Although he saw Mr. Gast and Ms. Brummer at the bar, he testified that he only talked to them for a few minutes and "really wasn't right next to them" throughout the evening. According to Mr. Romes, he consumed about two drinks early on in the evening and then switched to drinking Red Bull. He denied that he became intoxicated at the bar or that he ever left, pulled off the road, and "slumped over" his steering wheel. Mr. Romes testified that his vehicle collided with Ms. Brummer's in the parking lot of the bar when both of them were leaving. He stated that the parking lot was icy and he was traveling no more than five to ten miles per hour when his vehicle slid into the back of Ms. Brummer's.

**{¶22}** According to Mr. Romes, he spoke with Mr. Gast immediately after the collision occurred and they agreed to settle the matter privately. Mr. Romes testified that he and Mr. Gast worked together at a body shop and agreed that Ms. Brummer's car would be fixed at the shop. Once they agreed to that resolution, Mr. Romes drove home and started drinking again. He estimated that he had approximately three drinks at home before Trooper Mollohan knocked on his door. He denied telling Joyce Brummer that he started drinking again when he got home to make it appear as if he had been drinking at home rather than at the bar before he drove his vehicle. He also denied ever apologizing to her or anyone else for drinking too much that evening. According to Mr. Romes, he apologized for the collision itself, but never stated that it occurred because he had been drinking.

**{¶23}** Mr. Romes argues that the court lost its way in convicting him because the State presented unreliable and biased testimony. Because Trooper Mollohan did not see him for at least two hours after the collision occurred, he argues that it was not possible for the trooper to know whether he drank before the crash or whether he became impaired after he had several drinks at home. He casts Ms. Brummer's testimony as unreliable because even Trooper Mollohan acknowledged that her statement to him was "full of inaccuracies, exaggerations, and false statements." Additionally, he avers that Joyce Brummer was biased against him because she was trying to recover the costs to repair her daughter's car. He notes that Joyce "went so far as to send a letter to the judge asking [the judge] to make [him] pay for the damage but then denied sending the letter at trial even though it clearly appeared on the docket."

**{¶24}** As previously noted, Ms. Brummer testified that Mr. Romes got back into his vehicle and left the scene while she was still on the phone with her mother. Ms. Brummer stated that Mr. Romes was not driving well at the point in time, so he "fishtailed in the driveway" and

also "rutted up [the] yard" of the house where they had driven their vehicles after the collision. In her statement to Trooper Mollohan, Ms. Brummer estimated that Mr. Romes must have been traveling at about 40 m.p.h. when he hit her car. Ms. Brummer also admitted that she had consumed a few drinks that evening. Additionally, she admitted that she never called the police before the crash, despite claiming that she saw Mr. Romes "slouched over" his steering wheel and slurring his words. Ms. Brummer explained that Mr. Gast was friends with Mr. Romes and they did not want to get him into trouble if they could avoid doing so.

{¶25} During cross-examination, Trooper Mollohan agreed that his accident report did not include any information about Mr. Romes fishtailing or "rutt[ing] up" a yard when he left the scene. He was never asked, however, whether Ms. Brummer ever reported that information to him or whether he inspected the yard at issue for damage. He only agreed that the property owners at that residence never complained to him about their lawn.

{¶26} Trooper Mollohan did testify that the damage he observed to Ms. Brummer's car was not consistent with it having been struck at 40 m.p.h. He noted that the bumper sustained damage and a tail light was broken, but stated that the damage would have been more extensive if the car had been struck at that speed. Nevertheless, Trooper Mollohan testified that people tend to exaggerate when they are asked to estimate speed. He agreed that Ms. Brummer's statements about Mr. Romes' level of intoxication were consistent with his observations of Mr. Romes when he went to his house later that morning. He also testified that Mr. Romes initially denied being involved in any collision and said that "he really wasn't sure what [they] were talking about * * *." Mr. Romes' initial denial that the collision occurred was inconsistent with his later claim that he hit the car, but the parties agreed to handle the matter privately.

{¶27} As for Judy Brummer, she readily admitted that she insured her daughter's car and attempted to obtain Mr. Romes' insurance information, only to learn that he did not have insurance at the time of the crash. The trial court docket includes a letter from Judy, addressed to the trial court and filed four months before Mr. Romes' trial. In the letter, Judy expressed to the court that she was "appalled by [Mr. Romes'] actions and the reckless disregard for the medical and financial damage that he [] imposed on [her] family." She also outlined for the court all of the costs she incurred as a result of the accident and all of the medical problems her daughter continued to suffer from the impact of the collision. At trial, defense counsel asked Judy one question about the letter. That exchange reads as follows:

> [DEFENSE COUNSEL]: Thank you, ma'am. And in fact, you also wrote a letter to the Court trying to impress upon the Court that somebody needs to fix your daughter's car, isn't that correct?

> [JOYCE BRUMMER]: I did not write a letter to the Court impressing that somebody needed to fix my daughter's car.

Neither defense counsel, nor the State asked any follow-up questions about the letter. Having reviewed it in conjunction with Joyce's testimony, we do not agree with Mr. Romes' portrayal of the foregoing exchange as a complete denial on the part of Joyce that she sent a letter to the trial court. A reasonable inference to be drawn from the testimony is that Joyce denied that she wrote the court a letter for the specific purpose of securing repairs to her daughter's car. Because she was not asked, she never made a blanket denial that she never sent a letter to the court.

{¶28} Having reviewed the record, we cannot conclude that the court lost its way when it concluded that Mr. Romes drove his vehicle while intoxicated. The court was presented with conflicting testimony, and found the State's witnesses to be more credible than Mr. Romes. While Mr. Romes claimed that he was not intoxicated at the time he drove his vehicle, Ms. Brummer, her mother, and Trooper Mollohan all gave evidence to the contrary. "This Court will

not overturn a verdict on a manifest weight challenge simply because the [court] chose to believe the State's witnesses rather than [Mr. Romes]." *State v. Klein*, 9th Dist. Summit No. 26573, 2013-Ohio-3514, ¶ 12. The trial court was in the best position to listen to the witnesses and to judge their credibility. *See State v. Johnson*, 9th Dist. Summit No. 26914, 2014-Ohio-2856, ¶ 45. This is not the extraordinary case where the trial court created a manifest miscarriage of justice in finding Mr. Romes' guilty of OVI. Consequently, his OVI conviction is not against the manifest weight of the evidence, and his second assignment of error is overruled.

### III.

{¶29} Mr. Romes' assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

GINA PULITO, Attorney at Law, for Appellant.

GREGORY HUBER, J. MATTHEW LANIER, JOHN G. QUILLIN, and MICHAEL JOHN, Prosecuting Attorneys, for Appellee.