[Cite as *State v. Hicks*, 2017-Ohio-7014.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 16AP0019 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JESSICA A. HICKS | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 2015 TR-C 007531 |

DECISION AND JOURNAL ENTRY

Dated: July 31, 2017

HENSAL, Presiding Judge.

{¶1} Jessica Hicks appeals the denial of her motion to suppress in the Wayne County Municipal Court. For the following reasons, this Court affirms.

I.

{¶2} Sergeant Brad Bishop of the state highway patrol stopped Ms. Hicks for speeding. When he approached her vehicle, he noticed that Ms. Hicks had glassy and bloodshot eyes. He also detected the odor of alcohol on her breath. Sergeant Bishop asked Ms. Hicks to step out of her vehicle so that he could determine whether the odor was coming from her or her husband, who was in the passenger seat. After she got out of the vehicle, Ms. Hicks admitted drinking an alcoholic beverage about an hour earlier. Sergeant Bishop, smelling alcohol on her breath, had her perform field sobriety tests. He noticed four out of six clues during the horizontal gaze nystagmus test and three out of eight clues during the walk and turn test. Based on all of his observations, Sergeant Bishop arrested Ms. Hicks for operating under the influence. After

transporting her to his post, he used a Data Master machine to test the alcohol content of her breath, which determined that it was 0.08%.

{¶3}    Following the test, Sergeant Bishop charged Ms. Hicks with speeding and two counts of operating under the influence. Ms. Hicks moved to suppress the evidence against her, arguing Sergeant Bishop did not have probable cause to arrest her and that the Data Master machine was not working properly. Following a hearing, the municipal court denied her motion. Ms. Hicks subsequently pleaded no contest to the charges. The court found her guilty of them and, following merger of the operating under the influence counts, placed her on community control. Ms. Hicks has appealed the denial of her motion to suppress, assigning two errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE RESULTS OF HER BAC DATAMASTER BREATH TEST.

{¶4}    Ms. Hicks argues that the trial court incorrectly denied her motion to suppress. A motion to suppress presents a mixed question of law and fact:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶5}    Ms. Hicks argues that the trial court should have excluded the results of the Data Master test because it was not functioning properly at the time of her test. The Ohio Supreme Court has held that "[t]he admissibility of test results to establish alcoholic concentration under R.C. 4511.19 turns on substantial compliance with [Ohio Department of Health] regulations."

*City of Defiance v. Kretz*, 60 Ohio St.3d 1, 4 (1991); *see* R.C. 4511.19(D). It has "applied a burden-shifting procedure to govern the admissibility of alcohol-test results." *Burnside* at ¶ 24.

> The defendant must first challenge the validity of the alcohol test by way of a pretrial motion to suppress * * *. After a defendant challenges the validity of test results in a pretrial motion, the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health. Once the state has satisfied this burden and created a presumption of admissibility, the burden then shifts to the defendant to rebut that presumption by demonstrating that he was prejudiced by anything less than strict compliance. * * * Hence, evidence of prejudice is relevant only after the state demonstrates substantial compliance with the applicable regulation.

*Id.*

{¶6} Ms. Hicks argues that the State failed to comply with Ohio Administrative Code (OAC) 3701-53-04(A), which provides:

> A senior operator shall perform an instrument check on approved evidential breath testing instruments listed under paragraphs (A)(1), (A)(2), and (B) of rule 3701-53-02 no less frequently than once every seven days in accordance with the appropriate instrument checklist for the instrument being used. The instrument check may be performed anytime up to one hundred and ninety-two hours after the last instrument check.
>
> (1) The instrument shall be checked to detect radio frequency interference (RFI) using a hand-held radio normally used by the law enforcement agency performing the instrument check. The RFI detector check is valid when the evidential breath testing instrument detects RFI or aborts a subject test. If the RFI detector check is not valid, the instrument shall not be used until the instrument is serviced.
>
> (2) An instrument shall be checked using a solution containing ethyl alcohol approved by the director of health. An instrument check result is valid when the result of the instrument check is at or within five one-thousandths ( 0.005 ) grams per two hundred ten liters of the target value for that approved solution. An instrument check result which is outside the range specified in this paragraph shall be confirmed by the senior operator using another bottle of approved solution. If this instrument check result is also out of range, the instrument shall not be used until the instrument is serviced or repaired.

According to Ms. Hicks, the evidence that the State submitted at the hearing on her motion to suppress did not establish that it met its burden of demonstrating substantial compliance with that provision.

{¶7} Trooper James Walton testified that he calibrated the Data Master machine six days before Sergeant Bishop administered Ms. Hicks's test, following the appropriate checklist. He testified that after he inputted the information required for the test, the machine did an internal check, and then proceeded to the stage where he was required to check for radio interference. He used a radio to produce interference, and the machine aborted the test, as it should have. He then started from the beginning, preparing to simulate a real test with a solution provided by the Ohio Department of Health. The machine, however, detected interference, so it aborted the test again. Trooper Walton testified that he started the whole procedure over again. After running the radio interference check again, he was able test the solution, which produced a result within the permitted margin of error. He, therefore, considered the machine properly calibrated.

{¶8} This Court has recognized that "[t]he purpose of the seven-day calibration requirement is to ensure that the accuracy of the particular breath analysis machine has been pre-tested within seven days of the test given to the accused." *State v. Hostettler*, 9th Dist. Wayne No. 2308, 1988 WL 21282, *1 (Feb. 17, 1988). "Calibration checks are the truest measure of accuracy of a particular intoxilyzer at a particular time * * * and as long as the proper calibration of the intoxilyzer machine occurs, the test results are admissible in evidence." *Id*. The evidence presented by the State at the suppression hearing demonstrated that Trooper Walton fully complied with OAC 3701-53-04(A) when he calibrated the Data Master machine six days before

Ms. Hicks's test. The State, therefore, satisfied its burden under *Burnside*, creating a presumption of admissibility of the test result.

{¶9} Ms. Hicks argues that she rebutted the presumption of admissibility because the State was unable to properly calibrate the Data Master machine the day after her test. Trooper Justin Ross testified that he attempted to calibrate the machine the day after Ms. Hicks's test. He began with the radio interference test, and the machine properly detected it. When he attempted to move onto the solution test, however, the machine detected interference similar to the first time Trooper Walton had attempted to calibrate it the previous week. Unlike Trooper Walton, Trooper Ross did not start the process over. Knowing about Trooper Walton's experience the previous week, he stopped the testing procedure and asked his supervisor what he should do. According to Trooper Ross, his supervisor told him to take the machine out of service, so he ended up not doing any further tests on it.

{¶10} This Court has held that the State's failure to provide evidence of a compliant calibration test subsequent to an accused's breath alcohol test does not undermine the admissibility of the accused's test. *State v. Stecion*, 9th Dist. Summit No. 20626, 2002 WL 121201, *4 (Jan. 30, 2002); *State v. Wymer*, 9th Dist. Wayne No. 1958, 1985 WL 10720, *1 (Apr. 24, 1985); *State v. Madden*, 9th Dist. Summit No. 11396, 1984 WL 4806, *1 (Mar. 21, 1984). Ms. Hicks argues that this case is distinguishable, however, because Trooper Ross's difficulties in calibrating the Data Master machine subsequent to her test demonstrate that it was not functioning correctly.

{¶11} Trooper Ross testified that the fact that the Data Master detected interference does not mean it was malfunctioning. He testified that, according to the machine's operation guide, the interference result means that the machine detected a foreign substance. The trial court found

that the fact that the Data Master aborted some tests based on interference, therefore, was part of its normal operation and did not indicate a malfunction. The court's finding is supported by competent credible evidence.

{¶12} In light of the trial court's finding that the Data Master machine did not malfunction before, during, or after the administration of Ms. Hicks's test, we conclude that the trial court correctly determined that Ms. Hicks's test was admissible, despite the fact that the State failed to provide evidence of a successful calibration test subsequent to her test. *See Stecion* at *4 (concluding that breathalyzer test was admissible because it was conducted within 192 hours of pre-test calibration). Upon review of the record, we conclude that Ms. Hicks has not established that the State did not strictly comply with OAC 3701-53-04(A) or that she was prejudiced by anything less than strict compliance with that provision. Ms. Hicks's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS ON THE ISSUE OF PROBABLE CAUSE FOR ARREST.

{¶13} Ms. Hicks also argues that Sergeant Bishop did not have probable cause to arrest her for operating under the influence. To determine whether a police officer had probable cause to arrest an individual for operating under the influence, we consider whether, under the totality of the facts and circumstances surrounding the arrest at the moment of arrest, the officer "had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Homan*, 89 Ohio St.3d 421, 427 (2000), superseded on other grounds by statute as recognized in *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37.

**{¶14}** Sergeant Bishop testified that he arrested Ms. Hicks based on the speed she had been driving, the odor of alcohol coming from her, her glassy and bloodshot eyes, and the clues she gave during the field sobriety tests. We also note that Ms. Hicks admitted consuming alcohol only an hour before the stop. Based on the totality of the circumstances, we conclude that Sergeant Bishop had sufficient information to believe that Ms. Hicks was driving under the influence. *See State v. Krzemieniewski*, 9th Dist. Medina No. 15CA0015-M, 2016-Ohio-4991, ¶ 19; *State v. Rospert*, 9th Dist. Medina No. 12CA0033-M, 2012-Ohio-6110, ¶ 8; *State v. McGinty*, 9th Dist. Medina No. 08CA0039-M, 2009-Ohio-994, ¶ 19-20. Ms. Hicks's second assignment of error is overruled.

III.

**{¶15}** Ms. Hicks's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, J.
CONCURS.

CARR, J.
DISSENTING.

{¶16} I respectfully dissent in regard to the first assignment of error. While the majority relies on this Court's decision in *State v. Stecion*, 9th Dist. Summit No. 20626, 2002 WL 121201 (Jan. 30, 2002), where we held that the State's failure to provide evidence of a compliant calibration test subsequent to an accused's BAC test does not prohibit the admissibility of the accused's test results, *id*. at *3-4, I would conclude that the facts of the instant case are distinguishable. *Stecion* involved a scenario where the BAC Data Master machine could not be evaluated after the defendant took the test due to a variety of inexplicable circumstances, including an electrical storm during which lightning destroyed the computer chips on the Data Master, forcing the police department to replace the machine. *Id.* at *1. Unlike the circumstances in *Stecion*, this case involves a situation where the evidence suggests that there were issues with the Data Master machine both before and after Hicks was tested. In addition to the concerns surrounding the machine aborting a test when it was evaluated six days before Hicks' test, the machine was evaluated the day after Hicks was tested and the supervisor

determined that it was necessary to take the machine out of service due to continued problems. Under these circumstances where there were legitimate concerns surrounding the reliability of the Data Master machine, I would hold that the results of Hicks' test should be suppressed.

APPEARANCES:

DAVID C. KNOWLTON, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.