[Cite as *State v. Hetzel*, 2020-Ohio-3437.]

STATE OF OHIO          )          IN THE COURT OF APPEALS
                       )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT       )

STATE OF OHIO                      C.A. No.      29399

　　Appellee

　　v.                             APPEAL FROM JUDGMENT
                                   ENTERED IN THE
JOHN HETZEL                        AKRON MUNICIPAL COURT
                                   COUNTY OF SUMMIT, OHIO
　　Appellant                      CASE No.      18TRC06394

DECISION AND JOURNAL ENTRY

Dated: June 24, 2020

HENSAL, Presiding Judge.

{¶1}　John Hetzel appeals his conviction for operating a vehicle under the influence of alcohol from the Akron Municipal Court. This Court affirms.

I.

{¶2}　This appeal presents a challenge to the trial court's denial of Mr. Hetzel's pre-trial motion to suppress and his subsequent conviction for operating a vehicle under the influence of alcohol. According to his testimony at the suppression hearing, Trooper (now Sergeant) Nemastil with the Ohio State Highway Patrol observed Mr. Hetzel turn right without signaling around 12:35 a.m. on April 19, 2018. As he began to follow Mr. Hetzel's vehicle, he observed two marked-lane violations where Mr. Hetzel drove over the white fog line on the right-hand side of the road. Trooper Nemastil testified that these violations were significant, noting that almost half of Mr. Hetzel's vehicle travelled over the fog line.

{¶3}   Trooper Nemastil activated his overhead lights and Mr. Hetzel immediately pulled over.  After pulling over, Mr. Hetzel left his turn signal on, which remained on throughout the entire stop.  Trooper Nemastil approached the vehicle and noticed three additional passengers.  He immediately smelled the odor of alcohol emanating from inside of the vehicle.  Trooper Nemastil asked Mr. Hetzel for his driver's license, and Mr. Hetzel handed Trooper Nemastil his driver's license and his Richfield Police identification card, which was placed upside and on top of his driver's license.  Trooper Nemastil testified that Mr. Hetzel initially would not look at him.  When he did, Trooper Nemastil observed that Mr. Hetzel's eyes were red, bloodshot, and glassy.  Trooper Nemastil also noted that Mr. Hetzel was chewing gum and tobacco.

{¶4}   Trooper Nemastil then asked Mr. Hetzel to step out of the vehicle.  Once he did, Trooper Nemastil smelled alcohol on his person, and asked him to spit out his gum and chewing tobacco.  Trooper Nemastil asked Mr. Hetzel if he had consumed any alcohol that evening, and Mr. Hetzel admitted that he had consumed a couple of drinks.  Trooper Nemastil then conducted three field sobriety tests: the Horizontal Gaze Nystagmus ("HGN") test, the walk-and-turn test, and the one-leg-stand test.  Trooper Nemastil indicated that he observed 6 out of 6 clues of impairment during the HGN test, 3 out of 8 clues during the walk-and-turn test, and 3 out of 4 clues during the one-leg-stand test.  Trooper Nemastil placed Mr. Hetzel under arrest and transported him to the station.  While there, Trooper Nemastil read and showed Mr. Hetzel the BMV 2255, and offered Mr. Hetzel an opportunity to take a breathalyzer test, which he consented to.  The results of that test indicated that Mr. Hetzel's blood alcohol content was .144.

{¶5}   Mr. Hetzel was charged with operating a vehicle under the influence of alcohol or drugs in violation of Revised Code Sections 4511.19(A)(1)(a) and 4511.19(A)(1)(d), and a marked-lane violation in violation of Section 4511.33(A).  He pleaded not guilty and later moved

to suppress certain evidence prior to trial, including the results of the field sobriety tests and the results of the breathalyzer test. More specifically, he argued that Trooper Nemastil: (1) did not have a valid reason to stop him; (2) lacked reasonable, articulable suspicion to justify his continued detention for the purpose of conducting field sobriety tests; (3) failed to administer the field sobriety tests in compliance with the National Highway Traffic Safety Administration ("NHTSA") guidelines; (4) did not have probable cause to arrest him; (5) obtained statements from him in violation of his Fifth Amendment Right against self-incrimination; and (6) failed to administer the breathalyzer test in compliance with Revised Code Section 4511.19 and Ohio Administrative Code Chapter 3701-53. After a hearing, the trial court denied Mr. Hetzel's motion. He then pleaded no contest to the OVI charge under Section 4511.19(A)(1)(a), and the remaining charges were dismissed. He now appeals, raising four assignments of error for this Court's review. We will address some of his assignments of error out of order.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERR[]ED IN FINDING THAT THE ARRESTING OFFICER HAD REASONABLE ARTICULABLE SUSPICION TO DETAIN APPELLANT BEYOND THE SCOPE OF THE INITIAL TRAFFIC STOP TO CONDUCT FIELD SOBRIETY TESTING.

{¶6} In his first assignment of error, Mr. Hetzel argues that the trial court erred by denying his motion to suppress relative to whether Trooper Nemastil had reasonable, articulable suspicion to justify his continued detention for purposes of conducting field sobriety testing. This Court disagrees.

{¶7} Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court assumes the role of trier of fact and is in the best position to evaluate witness credibility and

resolve factual issues. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Accordingly, an appellate court must accept a trial court's findings of fact when they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100. Accepting those facts as true, the appellate court then must independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard. *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶8} As this Court has stated:

> The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. "Requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment." *State v. Keserich*, 5th Dist. Ashland No. 14-COA-011, 2014-Ohio-5120, ¶ 8, quoting *State v. Bright*, 5th Dist. Guernsey No. 2009-CA-28, 2010-Ohio-1111, ¶ 17. However, a police officer does not violate an individual's constitutional rights by administering field sobriety tests if the police officer has reasonable suspicion of criminal activity. *See State v. Simin*, 9th Dist. Summit No. 26016, 2012-Ohio-4389, ¶ 12. "Reasonable suspicion requires that the officer 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Buchanan*, 9th Dist. Medina No. 13CA0041-M, 2014-Ohio-3282, ¶ 8, quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Reasonable suspicion is based on the totality of the circumstances. *See United States v. Cortez*, 449 U.S. 411, 417-418 (1981).

*State v. Hochstetler*, 9th Dist. Wayne No. 16AP0013, 2016-Ohio-8389, ¶ 10. We note that "no single factor is dispositive of whether a law enforcement officer is legally justified in conducting field sobriety tests in any given case." *Id.* at ¶ 12. In denying Mr. Hetzel's motion to suppress, the trial court relied upon Trooper Nemastil's testimony regarding Mr. Hetzel's traffic violations, the time of the stop (i.e., around 12:35 a.m.), his bloodshot eyes, his admission that he had been drinking, and the smell of mint and chewing tobacco, which Trooper Nemastil indicated could be used to cover the odor of alcohol.

{¶9} On appeal, Mr. Hetzel argues that his minor lane violations, failure to use a turn signal, bloodshot eyes, and general odor of alcohol emanating from a vehicle with three other

passengers did not provide Trooper Nemastil with reasonable, articulable suspicion to prolong his detention for purposes of conducting field sobriety tests. In support of his position, Mr. Hetzel directs this Court to cases for the proposition that an officer does not have reasonable suspicion to continue a detention for purposes of conducting field sobriety tests based upon: (1) an unspecified odor of alcohol on the defendant's person and the admission to consuming a few beers; (2) a single minor marked-lanes violation, an odor of alcohol emanating from the interior of the vehicle, an odor or marijuana, and the defendant's red, watery, bloodshot eyes; (3) three or four de minimis lane violations followed by a period of unremarkable driving, a slight odor of alcohol on the defendant's person, and the defendant's admission to consuming a couple of beers; (4) the time of night, the defendant's glassy, bloodshot eyes, an odor of alcohol on the defendant's person, and the defendant's admission to consuming one or two beers; (5) a de minimis traffic violation, the defendant's glassy, bloodshot eyes, and an unspecified odor of alcohol; (6) a de minimis traffic violation, the defendant's red, glassy eyes, and a slight odor of alcohol; (7) a slight odor of alcohol on the defendant, the defendant's red, glassy eyes, and the defendant's admission to consuming two beers; and (8) the time of night, the defendant's red, glassy eyes, and the strong odor of alcohol coming from the defendant's person. Mr. Hetzel also cites excerpts from the 2015 NHTSA manual regarding the scientifically validated clues of intoxication, essentially arguing that out of all the clues of intoxication, he exhibited very few. He concludes that, because Trooper Nemastil lacked reasonable suspicion, the trial court erred by not suppressing all of the evidence that was obtained after he was ordered to exit his vehicle.

{¶10} Initially, we note that "[t]his court's review is necessarily limited to the record on appeal." *In re J.C.*, 186 Ohio App.3d 243, 2010-Ohio-637, ¶ 15 (9th Dist.). As Mr. Hetzel acknowledges in his merit brief, the NHTSA manual was not admitted into evidence at the

suppression hearing. This Court, therefore, will disregard the numerous excerpts from the 2015 NHTSA manual regarding the scientifically validated clues of intoxication, and will instead focus on Trooper Nemastil's testimony regarding those clues.

{¶11} This Court's review of the dash cam video supports Trooper Nemastil's testimony that Mr. Hetzel's marked-lane violations were significant; his vehicle travelled well over the white fog line twice within a short period of time. We, therefore, are unpersuaded by Mr. Hetzel's assertion that these were "minor" marked-lane violations. As previously noted, Trooper Nemastil also testified that the stop occurred around 12:35 a.m., that Mr. Hetzel had red, bloodshot, and glassy eyes, that an odor of alcohol was emanating from the vehicle, and that Mr. Hetzel was chewing gum and tobacco, which he noted could be used to cover the odor of alcohol. To the extent that Mr. Hetzel argues that out of all the possible clues of intoxication, he exhibited very few, we reiterate that "no single factor is dispositive of whether a law enforcement officer is legally justified in conducting field sobriety tests in any given case." *Hochstetler*, 2016-Ohio-8389, at ¶ 12. Viewing the totality of the circumstances at the moment Trooper Nemastil ordered Mr. Hetzel out of the vehicle – as Mr. Hetzel has urged this Court to do – we conclude that Trooper Hetzel had reasonable, articulable suspicion to prolong the detention for purposes of conducting field sobriety tests. *See Simin*, 2012-Ohio-4389, at ¶ 13 (noting that the defendant committed several traffic violations, which contributed to the officer's reasonable suspicion); *State v. Sunday*, 9th Dist. Summit No. 22917, 2006-Ohio-2984, ¶ 31 (noting that the "late hour" contributed to the officer's reasonable suspicion); *State v. Tomko*, 9th Dist. Summit No. 19253, 1999 WL 1037762, *3 (Nov. 3, 1999) (concluding that the defendant's bloodshot eyes and the smell of alcohol contributed to the officer's reasonable suspicion); *Sunday* at ¶ 31 (noting that the fact the officer observed a strong odor of mint, which he testified could be used to mask the odor of alcohol,

contributed to the officer's reasonable suspicion).  Mr. Hetzel's first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERR[]ED IN FINDING THAT ARRESTING OFFICER HAD PROBABLE CAUSE TO ARREST APPELLANT.

{¶12}  In his third assignment of error, Mr. Hetzel argues that the trial court erred by denying his motion to suppress because Trooper Nemastil lacked probable cause to arrest him.  He argues that, since Trooper Nemastil lacked reasonable, articulable suspicion to order him out his vehicle to conduct field sobriety tests, any evidence obtained after he was ordered to exit his vehicle should have been suppressed and, therefore, cannot be used to support a finding of probable cause.  For the reasons that follow, this Court disagrees.

{¶13}  "[T]his Court reviews a probable cause determination de novo." *State v. Russo*, 9th Dist. Medina No. 09CA0009-M, 2009-Ohio-6914, ¶ 6, quoting *Sunday* at ¶ 28.  Before an officer may effectuate a warrantless arrest, he must have probable cause that the suspect is engaging in criminal activity.  *State v. McGinty*, 9th Dist. Medina No. 08CA0039-M, 2009-Ohio-994, ¶ 11.  An officer has probable cause to arrest a person for driving under the influence of alcohol "if, at the moment of the arrest, the totality of the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had violated R.C. 4511.19." *State v. Kurjian*, 9th Dist. Medina No. 06CA0010-M, 2006-Ohio-6669, ¶ 17, quoting *In re V.S.*, 9th Dist. Summit No. 22632, 2005-Ohio-6324, ¶ 13.

{¶14}  Notably, the "totality of the facts and circumstances can support probable cause for arrest even in the absence of the administration of field sobriety tests." *Russo* at ¶ 10.  "In fact, we have held that 'the totality of the facts and circumstances can support a finding of probable cause

to arrest even when the results of the field sobriety tests must be excluded for lack of compliance to standardized procedures.'" *Id.*, quoting *Sunday* at ¶ 32. Additionally, we note that "[r]egardless of a challenge to field sobriety tests, an officer may testify regarding his observations made during administration of the tests." (Alteration sic.). *State v. Slates*, 9th Dist. Summit No. 25019, 2011-Ohio-295, ¶ 29, quoting *State v. Griffin*, 12th Dist. Butler No. CA2005-05-118, 2006-Ohio-2399, ¶ 11. When a trial court erroneously fails to suppress the results of a field sobriety test, any error in that regard is rendered harmless if the officer otherwise had probable cause to arrest the defendant. *See State v. Calder*, 7th Dist. Monroe No. 08 MO 5, 2009-Ohio-3329, ¶ 47; *State v. Hessel*, 12th Dist. Warren No. CA2009-03-031, 2009-Ohio-4935, ¶ 22 ("Ohio courts have repeatedly found that even if a trial court erroneously fails to suppress the results of field sobriety tests, when ample evidence exists to support the arrest, this error is harmless.").

{¶15} Even assuming, without deciding, that the trial court should have excluded the results of the field sobriety tests (as Mr. Hetzel has argued in his second assignment of error addressed below), Trooper Nemastil still had probable cause to arrest Mr. Hetzel. In our analysis of Mr. Hetzel's first assignment of error, this Court has already concluded that reasonable, articulable suspicion existed to support Trooper Nemastil's continued detention of Mr. Hetzel for purposes of conducting field sobriety tests. This was based upon Trooper Nemastil's testimony regarding Mr. Hetzel's traffic violations, the time of the stop, Mr. Hetzel's red, bloodshot, and glassy eyes, an odor of alcohol emanating from the vehicle, and the fact that Mr. Hetzel was chewing gum and tobacco, which Trooper Nemastil noted could be used to cover the odor of alcohol. Trooper Nemastil also testified that – after Mr. Hetzel exited the vehicle – he observed an odor of alcohol coming from Mr. Hetzel's person, and Mr. Hetzel admitted to consuming a few alcoholic drinks. Additionally, Trooper Nemastil testified that, during the walk-and-turn test, Mr.

Hetzel took ten steps instead of nine, stopped to steady himself, and used his arms for balance. Trooper Nemastil further testified that, during the one-leg-stand test, Mr. Hetzel used his arms for balance, swayed, and placed his foot on the ground. In light of this evidence, this Court concludes that the totality of the facts and circumstances indicate that Trooper Nemastil had probable cause to arrest Mr. Hetzel for driving under the influence of alcohol. *See Russo* at ¶ 12 (concluding that the totality of the circumstances, including "the late hour, [the defendant's] bloodshot and glossy eyes, the immediate smell of alcohol upon approach, [the defendant's] admission to having had a few alcoholic beverages, and the officer's observations during the field sobriety tests," supported a finding of probable cause). Mr. Hetzel's third assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERR[]ED IN FINDING THAT THE FIELD SOBRIETY TESTS WERE CONDUCTED IN SUBSTANTIAL COMPLIANCE WITH THE NHTSA MANUAL, AS THE STATE FAILED TO INTRODUCE THE APPLICABLE PORTIONS OF THE NHTSA MANUAL STANDARDS INTO EVIDENCE.

{¶16} In his second assignment of error, Mr. Hetzel argues that the trial court erred by determining that the field sobriety tests were performed in substantial compliance with the NHTSA standards when the State did not introduce the manual into evidence, and Trooper Hetzel did not provide testimony explaining what those standards were. As a result, he argues, this Court should reverse the trial court's denial of his motion to suppress and remand the matter for the trial court to determine whether probable cause existed to arrest him without considering the field sobriety tests.

{¶17} As previously noted, the "totality of the facts and circumstances can support probable cause for arrest even in the absence of the administration of field sobriety tests[,]" or "'when the results of the field sobriety tests must be excluded for lack of compliance to

standardized procedures.'" *Russo*, 2009-Ohio-6914, at ¶ 10, quoting *Sunday*, 2006-Ohio-2984, at ¶ 32. In light of this Court's resolution of Mr. Hetzel's third assignment of error, we conclude that Mr. Hetzel has not established that the trial court committed reversible error by determining that Trooper Nemastil conducted the field sobriety tests in substantial compliance with the NHTSA standards. *See Calder*, 2009-Ohio-3329, at ¶ 47 (concluding that any error in the trial court's failure to suppress the results of the field sobriety tests was harmless because the officer otherwise had probable cause to arrest the defendant); *Hessel*, 2009-Ohio-4935, at ¶ 22 ("Ohio courts have repeatedly found that even if a trial court erroneously fails to suppress the results of field sobriety tests, when ample evidence exists to support the arrest, this error is harmless."). Mr. Hetzel's second assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERR[]ED IN FAILING TO SUPPRESS THE RESULTS OF THE BREATHALYZER TESTS AS THE STATE FAILED TO MEET THEIR EVIDENTIARY BURDEN TO ESTABLISH THAT THE TEST WAS ADMINISTERED IN SUBSTANTIAL COMPLIANCE WITH THE APPLICABLE REVISED CODE AND ADMINISTRATIVE CODE REGULATIONS.

{¶18} In his fourth assignment of error, Mr. Hetzel argues that the trial court erred by failing to suppress the results of the breathalyzer test. For the reasons that follow, this Court concludes that Mr. Hetzel has not established reversible error.

{¶19} After the trial court denied Mr. Hetzel's motion to suppress, he pleaded no contest to the OVI charge under Section 4511.19(A)(1)(a), which prohibits persons from operating a vehicle while under the influence of alcohol and "focuses on the conduct of the defendant and observations of the arresting officers[.]" *State v. Gladman*, 2d Dist. Clark No. 2013 CA 99, 2014-Ohio-2554, ¶ 24. The OVI charge under Section 4511.19(A)(1)(d), which prohibits persons with

a prohibited blood-alcohol concentration from operating a vehicle and focuses on the results of a chemical test or breathalyzer exam, was dismissed.

{¶20}   Criminal Rule 11(B)(2) provides that a "plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment[.]"  As this Court has stated, "[a] no contest plea generally waives the right to appeal most issues." (Alteration sic.)  *State v. Palacios*, 9th Dist. Lorain No. 17CA011093, 2018-Ohio-3523, ¶ 8, quoting *State v. Smith*, 9th Dist. Lorain No. 08CA009338, 2008-Ohio-6942, ¶ 3.  It does not, however, "preclude a defendant from asserting upon appeal that the trial court *prejudicially erred* in ruling on a pretrial motion, including a pretrial motion to suppress evidence."  (Emphasis added.)  Crim.R. 12(I).

{¶21}   Here, Mr. Hetzel asserts that the trial court erred by not excluding the results of the breathalyzer test.  While the results of a breathalyzer test can be used to show impairment under Section 4511.19(A)(1)(a), they are not necessary.  *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, ¶ 19 (noting that the results of a bodily substance test can be used to show impairment under Section 4511.19(A)(1)(a)); *State v. Arenz*, 5th Dist. Licking No. 06CA111, 2007-Ohio-4283, ¶ 18 ("The results of the blood test are not necessary to establish a violation of R.C. 4511.19(A)(1)(a).").  Mr. Hetzel has not explained how the results of that test prejudiced him with respect to his conviction under Section 4511.19(A)(1)(a).  In fact, his assignment of error only references breathalyzer-test results in relation to per se OVI offenses, yet Mr. Hetzel's per se OVI charge under Section 4511.19(A)(1)(d) was dismissed, and he has not explained how he suffered prejudice in relation to that offense.  Given the procedure of this case[1] and the arguments before this Court

---

[1] We note that this case is procedurally distinguishable from this Court's prior decisions in *State v. Palacios*, 9th Dist. Lorain No. 17CA011093, 2018-Ohio-3523, and *State v. Oaks*, 9th Dist. Wayne No. 18AP0032, 2020-Ohio-1200.

on appeal, we cannot say that Mr. Hetzel has established that the trial court committed reversible error when it denied his motion to suppress relative to the results of the breathalyzer test. *See Princess Kim, L.L.C. v. U.S. Bank, N.A.*, 9th Dist. Summit No. 27401, 2015-Ohio-4472, ¶ 18 ("To demonstrate reversible error, an aggrieved party must demonstrate both error and resulting prejudice."). Accordingly, Mr. Hetzel's fourth assignment of error is overruled.

III.

{¶22} Mr. Hetzel's assignments of error are overruled. The judgment of the Akron Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

———

In *Palacios*, after the trial court denied his motion to suppress the results of a blood test, the defendant pleaded no contest to an OVI charge under Section 4511.19(A)(1)(a), and to a per se OVI charge under Section 4511.19(A)(1)(b). *Palacios* at ¶ 4-5. The trial court found the defendant guilty of both charges and merged the per se OVI conviction with the defendant's conviction under Section 4511.19(A)(1)(a). *Id.* at ¶ 5. The defendant challenged the trial court's denial of his motion to suppress the results of the blood test on appeal, and this Court noted that "under ordinary circumstances, this Court would conclude that [the defendant] forfeited [that] argument." *Id.* at ¶ 8, citing *Smith*, 2008-Ohio-6942, at ¶ 3. This Court, however, sustained the defendant's assignment error, in part, based upon an issue with the defendant's plea. *Palacios* at ¶ 9-11.

In *Oaks*, the defendant was charged with an OVI offense under Section 4511.19(A)(1)(a); she was not charged with a per se OVI offense. *Oaks* at ¶ 3. After the trial court denied her motion to suppress the results of a urine test, the defendant pleaded no contest, and the trial court found her guilty. *Id.* at ¶ 3-4. The defendant challenged the trial court's denial of her motion to suppress the results of the urine test on appeal. *Id.* at ¶ 5. In a per curium decision with three separate opinions, including a dissent, this Court reversed and remanded the matter. *Id.* at ¶ 6. That decision does not provide authoritative precedent on the matter now before this Court, which is procedurally distinct.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

SCHAFER, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

PATRICK D. QUINN and RONALD A. ANNOTICO, Attorneys at Law, for Appellant.

EVE V. BELFANCE, Director of Law, and BRIAN D. BREMER, Assistant Director of Law, for Appellee.