**[Cite as *State v. Consiglio*, 2021-Ohio-990.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No.     20CA0035-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KEVIN C. CONSIGLIO | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.     19TRC04438 |

## DECISION AND JOURNAL ENTRY

Dated: March 29, 2021

HENSAL, Presiding Judge.

{¶1}   Kevin Consiglio appeals his conviction for operating a vehicle under the influence of alcohol from the Medina Municipal Court.  This Court reverses.

I.

{¶2}   Trooper Pangburn and the field training officer assigned to him, Trooper Graber, were parked in the median on I-71 in Brunswick on Friday, June 21, 2019.  Around 11:00 p.m., Trooper Pangburn observed Mr. Consiglio's vehicle travelling southbound in the far-left lane going about 15 m.p.h. over the posted speed limit.  As soon as Mr. Consiglio's vehicle passed the patrol car, Mr. Consiglio immediately slowed down and changed lanes to the far-right lane.  Trooper Pangburn pulled out of the median and initiated a traffic stop.  While doing so, Trooper Pangburn did not observe any additional traffic violations.

{¶3}   Trooper Pangburn approached the passenger side of Mr. Consiglio's vehicle, advised him that he pulled him over for speeding, and asked Mr. Consiglio for his driver's license.

Mr. Consiglio produced his driver's license without incident. Trooper Pangburn detected a strong odor of alcohol emanating from the vehicle and observed that Mr. Consiglio's eyes were glassy.[1] Mr. Consiglio indicated that he was driving from the Cleveland Indians game to his parent's house, and admitted that he consumed two beers that evening. Trooper Pangburn asked Mr. Consiglio to step out of his vehicle, which he did without any difficulty.

{¶4} Trooper Pangburn then administered three standard field sobriety tests ("SFSTs") to Mr. Consiglio: (1) the horizonal gaze nystagmus ("HGN") test; (2) the walk-and-turn ("WAT") test; and (3) the one-leg-stand ("OLS") test. Trooper Pangburn observed four out of six clues on the HGN test. He observed 3 out of 8 clues on the WAT test at the scene, but later observed an additional clue after watching the dashcam video at the station. More specifically, at the scene, he observed that Mr. Consiglio started the test before he told him to, got out of the starting position before being told to do so, and turned incorrectly. When he returned to the station and watched the dashcam video, he noticed that Mr. Consiglio raised his arms during the WAT test. On cross-examination, Trooper Pangburn acknowledged that the dashcam video indicated that he did not instruct Mr. Consiglio to stay in position until he (Trooper Pangburn) instructed him to begin the WAT test, and that he did not instruct Mr. Consiglio to keep his arms at his sides throughout the duration the WAT test. Trooper Pangburn observed no clues on the OLS test, noting that Mr. Consiglio did well on that test. Trooper Graber then administered a portable breathalyzer test to Mr. Consiglio, but did not share the results of that test with Trooper Pangburn at the scene. Trooper Pangburn then placed Mr. Consiglio under arrest and transported him to the station. Trooper

---

[1] At the suppression hearing, Trooper Pangburn testified that Mr. Consiglio's eyes were glassy, red, and bloodshot. On cross-examination, however, he acknowledged that his report only indicated that Mr. Consiglio's eyes were glassy, and that his report was accurate.

Pangburn indicated that Mr. Consiglio was polite and cooperative throughout their entire interaction, and that he detected no problems with Mr. Consiglio's speech.

{¶5} Mr. Consiglio was charged with one count of operating a vehicle while under the influence of alcohol in violation of Revised Code Section 4511.19(A)(1)(a), one count of operating a vehicle while under the influence of alcohol in violation of Section 4511.19(A)(1)(d), and one count of speeding in violation of Section 4511.21(D)(3). He pleaded not guilty and moved to suppress the results of the HGN and the WAT tests on the basis that Trooper Pangburn failed to conduct those tests in substantial compliance with the NHTSA standards. Mr. Consiglio also argued that Trooper Pangburn lacked reasonable articulable suspicion to stop his vehicle, and that Trooper Pangburn lacked probable cause to arrest him. Mr. Consiglio later supplemented his motion to suppress, arguing that a review of the dashcam video indicated that Trooper Pangburn stopped the wrong vehicle for speeding.

{¶6} The trial court held a hearing on the matter wherein Trooper Pangburn testified on behalf of the State, and the defense presented no witnesses. Two exhibits were admitted into evidence: (1) video from Trooper Pangburn's dashcam; and (2) portions of the 2018 National Highway Traffic Safety Administration ("NHTSA") manual relating to SFST administration. At the end of the hearing, the trial court stated that there was no indication that Trooper Pangburn stopped the wrong vehicle. The trial court, therefore, overruled that portion of Mr. Consiglio's motion to suppress. It then took the remainder of the matter under advisement and issued a written decision several days later.

{¶7} In its written decision, the trial court reiterated that there was no indication that Trooper Pangburn stopped the wrong vehicle, overruling Mr. Consiglio's challenge to the stop itself. It then determined that Trooper Pangburn failed to administer the HGN and WAT tests in

substantial compliance with the NHTSA standards, and granted Mr. Consiglio's motion to suppress in that regard.

{¶8} The trial court then discussed the factors that supported a finding of probable cause, including: (1) the fact that the stop occurred at 11:11 p.m. on a Friday night; (2) Trooper Pangburn's observation of a strong odor of alcohol emanating from the vehicle; (3) the fact that Mr. Consiglio admitted to drinking two beers; (4) Trooper Pangburn's observation that Mr. Consiglio's eyes were glassy; (5) the fact that Mr. Consiglio was speeding; and (6) the fact that Mr. Consiglio's vehicle rapidly decelerated as it passed Trooper Pangburn's cruiser. Regarding the latter, the trial court indicated that it took judicial notice of portions of the 2018 NHTSA manual indicating that varying speed and deceleration for no apparent reason are potential indicators of impaired driving.

{¶9} The trial court also noted that, while it could not consider the results of the SFSTs, it could still consider Trooper Pangburn's observations while administering those tests. This included Trooper Pangburn's observations that Mr. Consiglio had difficulty following instructions, and that Mr. Consiglio had balance issues during the WAT test. The trial court concluded that, based upon the totality of the circumstances, Trooper Pangburn had probable cause to arrest Mr. Consiglio for an OVI. It, therefore, overruled Mr. Consiglio's motion to suppress in that regard.

{¶10} Following the trial court's ruling on his motion to suppress, Mr. Consiglio pleaded no contest, and the trial court found him guilty. He now appeals, raising one assignment of error for this Court's review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT FOUND THAT TROOPER PANGBURN HAD PROBABLE CAUSE TO ARREST APPELLANT FOR OPERATING A VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL AND DENIED THE MOTION TO SUPPRESS.

{¶11}  In his assignment of error, Mr. Consiglio argues that the trial court erred by denying his motion to suppress relative to whether Trooper Pangburn had probable cause to arrest him for an OVI.  This Court agrees.

{¶12}  Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  The trial court assumes the role of trier of fact and is in the best position to evaluate witness credibility and resolve factual issues.  *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  Accordingly, an appellate court must accept a trial court's findings of fact when they are supported by competent, credible evidence.  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100.  Accepting those facts as true, the appellate court then must independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard.  *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶13}  "[T]his Court reviews a probable cause determination de novo."  *State v. Russo*, 9th Dist. Medina No. 09CA0009-M, 2009-Ohio-6914, ¶ 6, quoting *State v. Sunday*, 9th Dist. Summit No. 22917, 2006-Ohio-2984, ¶ 28.  Before an officer may effectuate a warrantless arrest, he must have probable cause that the suspect is engaging in criminal activity.  *State v. McGinty*, 9th Dist. Medina No. 08CA0039-M, 2009-Ohio-994, ¶ 11.  An officer has probable cause to arrest a person for driving under the influence of alcohol "if, at the moment of the arrest, the totality of the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy

information were sufficient to warrant a prudent person in believing that the suspect had violated R.C. 4511.19." *State v. Kurjian*, 9th Dist. Medina No. 06CA0010-M, 2006-Ohio-6669, ¶ 17, quoting *In re V.S.*, 9th Dist. Summit No. 22632, 2005-Ohio-6324, ¶ 13.

{¶14} Notably, the "totality of the facts and circumstances can support probable cause for arrest even in the absence of the administration of field sobriety tests." *Russo* at ¶ 10. "In fact, we have held that 'the totality of the facts and circumstances can support a finding of probable cause to arrest even when the results of the field sobriety tests must be excluded for lack of compliance to standardized procedures.'" *Id.*, quoting *Sunday* at ¶ 32. Additionally, we note that "[r]egardless of a challenge to field sobriety tests, a police officer may testify regarding his observations made during administration of the tests." (Alteration sic.). *State v. Slates*, 9th Dist. Summit No. 25019, 2011-Ohio-295, ¶ 29, quoting *State v. Griffin*, 12th Dist. Butler No. CA2005-05-118, 2006-Ohio-2399, ¶ 11.

{¶15} Mr. Consiglio argues that two of the factors the trial court considered in determining whether probable cause existed were not supported by competent, credible evidence. Specifically, he argues that glassy eyes are not listed as an indicator of impairment in the NHTSA manual, and that the trial court should not have considered his speed as a factor since the portion of the NHTSA manual regarding the correlation between speed and the statistical likelihood of impairment was not mentioned, let alone introduced as an exhibit, at the suppression hearing. He argues that the portion of the NHTSA manual correlating speed with the statistical likelihood of impairment contains scientific studies, which the trial court should not have considered since no expert testified regarding those studies at the suppression hearing. He concludes that, if glassy eyes and the statistical likelihood of speed being an indicator of impairment are excluded as factors, then the trial court was left with his admission that he drank two beers, the strong odor of alcohol,

the late hour, and excessive speed (i.e., without regard to the statistical likelihood of speed being an indicator of impairment) as potential indicators of impairment, which is insufficient for purposes of establishing probable cause.

{¶16} Regarding Mr. Consiglio's argument that glassy eyes are not an indicator of impairment, Mr. Consiglio relies upon a portion of the NHTSA manual that was not introduced or admitted as evidence at the suppression hearing. This Court, therefore, will not consider that excerpt and will instead focus on Trooper Pangburn's testimony regarding the clues of impairment. *See State v. Hetzel*, 9th Dist. Summit No. 29399, 2020-Ohio-3437, ¶ 10 (disregarding excerpts from the NHTSA manual cited in the appellant's brief that were not introduced as evidence at the suppression hearing, and instead relying upon the trooper's testimony). Trooper Pangburn testified that Mr. Consiglio's glassy eyes were an indicator of impairment, which is consistent with this Court's case law. *See State v. Hostetler*, 9th Dist. Wayne No. 18AP0058, 2019-Ohio-3413, ¶ 8 (addressing physiological factors that tend to demonstrate intoxication, including glassy eyes). We, therefore, reject Ms. Consiglio's argument that the trial court should not have considered his glassy eyes as an indicator of impairment.

{¶17} Regarding the fact that the trial court sua sponte took judicial notice of a portion of the NHTSA manual, this Court agrees that the trial court's varying speed/rapid deceleration analysis is problematic, but for a different reason. The trial court relied upon Trooper Pangburn's testimony that Mr. Consiglio rapidly decelerated when he passed his (Trooper Pangburn's) patrol car. It then cited a portion of the NHTSA manual indicating that varying speed and accelerating or decelerating for no apparent reason are potential indicators of impairment. That portion of the NHTSA manual, however, is not part of the record on appeal. Notwithstanding, a review of Trooper Pangburn's testimony reveals that he never mentioned Mr. Consiglio's varying speed or

rapid deceleration as indicators of impairment. In fact, regarding the fact that Mr. Consiglio rapidly decelerated, Trooper Pangburn testified that he assumed Mr. Consiglio did so because he noticed the patrol car in the median, and that it is not unusual for motorists to brake and reduce their speed when they notice a patrol car. Mr. Consiglio's deceleration, therefore, was not unexplained as the trial court insinuated. Thus, even assuming without deciding that the trial court properly took judicial notice of a portion of the NHTSA manual, we conclude that the trial court erred by considering Mr. Consiglio's rapid deceleration as an indicator of impairment.

{¶18} Having determined that Mr. Consiglio's rapid deceleration should not have been considered as an indicator of impairment, we now turn to the remainder of the evidence to determine whether the trial court erred when it determined that Trooper Pangburn had probable cause to arrest Mr. Consiglio for an OVI. This includes: (1) the fact that the stop occurred at 11:11 p.m. on a Friday night; (2) Trooper Pangburn's observation of a strong odor of alcohol emanating from the vehicle; (3) the fact that Mr. Consiglio admitted to drinking two beers; (4) Trooper Pangburn's observation that Mr. Consiglio's eyes were glassy; (5) the fact that Mr. Consiglio was speeding; (6) the fact that Mr. Consiglio had difficulty following instructions during the SFSTs, and (7) the fact that Mr. Consiglio had balance issues during the WAT test. Regarding Mr. Consiglio's apparent difficulty following instructions, this Court's review of the dashcam video does not support the trial court's conclusion in this regard. While the video does show that Mr. Consiglio moved his feet before being instructed to begin the WAT test, the video does not give any indication that Mr. Consiglio did so as a result of being impaired, as opposed to simply misunderstanding Trooper Pangburn's instructions, which – as the trial court found – were not in compliance with the NHTSA standards. Similarly, with respect to the balance issues during the WAT test, the trial court appears to be relying on the fact that Mr. Consiglio slightly raised his

arms during that test. Trooper Pangburn, however, did not instruct Mr. Consiglio to keep his arms at his sides throughout the duration of the WAT test, as the NHTSA manual requires. Further, Trooper Pangburn acknowledged that he noticed this clue while watching the dashcam video at the station after the arrest. Probable cause, however, focuses on "the totality of the facts and circumstances within the officer's knowledge" at "the moment of the arrest[.]" *Kurjian*, 2006-Ohio-6669, at ¶ 17, quoting *In re V.S.*, 2005-Ohio-6324, at ¶ 13. Having reviewed Trooper Pangburn's testimony and the dashcam video, we cannot say that the record provides competent, credible evidence to support the trial court's findings that Mr. Consiglio had balance issues during the WAT test, or that his apparent difficulty following Trooper Pangburn's instructions, which were not given in substantial compliance with the NHTSA standards, was an indicator of impairment under these facts. *Roberts*, 110 Ohio St.3d 71, at ¶ 100 (providing the competent, credible evidence standard).

{¶19} While the late hour, speeding, glassy eyes, a strong odor of alcohol, and the admission of drinking two beers certainly contribute to a probable-cause finding, probable cause is based upon the totality of the circumstances. *Kurjian* at ¶ 17, quoting *In re V.S.* at ¶ 13. Here, we emphasize that the dashcam video undermines the trial court's conclusion that probable cause existed to arrest Mr. Consiglio. It shows that Mr. Consiglio pulled over without committing any additional traffic violations, exited his vehicle without difficulty, was courteous, cooperative, and lucid throughout his entire interaction with Trooper Pangburn, and otherwise did not appear impaired. While we do not rule out that the indicators of impairment present in this case could exist in degrees sufficient to support a finding of probable cause, such was not the case here. *See State v. Hopp*, 9th Dist. Summit No. 28095, 2016-Ohio-8027, ¶ 11 ("Although we do not rule out that there could exist a case where the present factors of prior alcohol consumption, odor of

alcohol, slurred speech, and bloodshot eyes, may exist in degrees sufficient to support a finding of probable cause, such was not the case here."). Given the admissible evidence before the trial court, we cannot say that the record provides competent, credible evidence to support the trial court's conclusion that Trooper Pangburn had probable cause to arrest Mr. Consiglio for an OVI. We reach this conclusion having reviewed the cases cited by the State, which are readily distinguishable based upon the facts and additional indicators of impairment present in those cases. *See State v. Ghouche*, 9th Dist. Medina No. 19CA0034-M, 2020-Ohio-3311, ¶ 16 (affirming the trial court's probable-cause determination with some of the same and/or similar indicators of impairment, but with the addition of the trooper's testimony that the defendant took eight steps instead of nine, made an improper turn, and stepped off the imaginary straight line during the WAT test, and that the defendant hopped, swayed, put his foot down, and raised his arms for balance during the OLS test); *Hetzel*, 2020-Ohio-3437, at ¶ 2, 11, 15 (affirming the trial court's probable-cause determination with some of the same and/or similar indicators of impairment, but with the addition of the trooper's testimony that the defendant committed multiple traffic violations, including driving well over the white fog line twice, that the defendant was chewing gum and tobacco, which could be used to cover the odor of alcohol, that the defendant took ten steps instead of nine, stopped to steady himself, and used his arms for balance during the WAT test, and that the defendant used his arms for balance, swayed, and placed his foot on the ground during the OLS test). In light of the foregoing, Mr. Consiglio's assignment of error is sustained.

III.

{¶20} Mr. Consiglio's assignment of error is sustained. The judgment of the Medina Municipal Court is reversed.

Judgment reversed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
TEODOSIO, J.
CONCUR.


APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

GREGORY A. HUBER, Prosecuting Attorney, for Appellee.